J-A26016-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| W.P., | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| J.P., | |
| Appellant | No. 689 MDA 2014 |

Appeal from the Order Entered April 3, 2014
In the Court of Common Pleas of Schuylkill County
Civil Division at No(s): S-1735-2011

BEFORE: BOWES, MUNDY, and JENKINS, JJ.

MEMORANDUM BY BOWES, J.: **FILED OCTOBER 20, 2014**

J.P. ("Father") appeals from the April 3, 2014 order denying his petition for contempt and emergency relief. We reverse and remand with directions.

This case illustrates how a custodial parent's court-sanctioned pernicious conduct has created such a corrupted environment that the children have become alienated from the non-offending noncustodial parent. We succinctly summarized the procedural history of this acrimonious custody dispute in a prior appeal.

> This case has a regrettably long and arduous history. J.P. and W.P. ("Mother") are the parents of two minor sons, G.P. and T.P. The parties married in 1998 and divorced in 2011. Mother and Father initially agreed to share custody of their sons, but in August 2011, Mother filed a petition seeking primary custody of the children. Following hearings before the trial court, an order was entered giving Mother primary physical and legal custody of the children and giving Father partial physical custody. In

February 2013, Mother filed a petition seeking to relocate to Ormond Beach, Florida, where both of her parents reside. Father opposed Mother's petition and filed a petition seeking primary custody of the children. Shortly thereafter, Mother filed a petition for emergency relief, in which she sought to have Father's custodial periods suspended based upon allegations by the children that Father had inappropriately touched them. The parties agree to suspend Father's custodial periods until the investigation of the allegations, undertaken by the Office of Children and Youth Services ("CYS") concluded, and agreed to the appointment of a guardian ad litem for the children. CYS ultimately concluded that the allegations were unfounded.[1]

_____

[1] The parties' older child, G.P., made the initial allegations. T.P., later allegedly made similar accusations. Although all claims of abuse were determined to be unfounded, the relationship between Father and sons has deteriorated to such an extent that the trial court ordered them to participate in reunification therapy.

_____

***W.P. v. J.P.***, 1955 MDA 2013 (filed April 25, 2014) (unpublished memorandum at 2).

On July 8, 2013, the trial court awarded Mother sole legal custody and primary physical custody of G.P. and T.P. and permitted Mother to relocate with the children to Ormond, Florida.  The court granted Father periods of partial physical custody[1] but paragraph four of the order provided that Father could not exercise custody of the children "until the reconciliation counselor, Amy Riegel, determines that the children were emotionally ready for such extended visits."  Trial Court Order, 7/8/13, at 3.  We affirmed.

_____

[1] Father was granted four weekends of physical custody during the children's academic year, four weeks over summer vacation, and certain holidays.

Father completed reunification counseling with T.P. prior to the children's relocation to Florida during August 2013, however, for several reasons, including Mother's meddling, therapy was never completed with G.P. On September 3, 2013, Father filed a petition for contempt against Mother due to, *inter alia*, her interference with G.P.'s counseling with Ms. Riegel. The trial court denied all requested relief on October 18, 2013, and Father appealed that order. As discussed *infra*, we reversed the portion of the order relating to Father's allegations of contempt. Father has not had physical contact with T.P or G.P. since August 2013, but he maintained contact with the children by telephone, Skype, FaceTime, and text messages.

On January 17, 2014, while the prior appeal was pending, Father filed a second petition for contempt against Mother and a request for special relief. That petition, which is the genesis of this appeal, asserted, *inter alia*, that Mother was in contempt of the July 8, 2013 custody order based on her interference with both his court-ordered custodial rights to T.P. during Christmas 2013, and his noncustodial contact with G.P. during that period. As it relates to his request for special relief, Father sought reimbursement of the $806.32 that he paid Mother for one-half of the children's airfare for

Christmas custody.[2]  Significantly, Father did not request that the trial court revisit paragraph four of the custody arrangement or reiterate his prior grounds for contempt, which was that Mother interfered with his ability to facilitate reunification counseling with T.P.  Likewise, Father did not seek to modify the existing custody arrangement.  Mother did not file a response to Father's petition.[3]

On March 18, 2014, the trial court held an evidentiary hearing, and on April 3, 2014, the court denied Father's allegations of contempt for Mother's obstinate interference with his custody rights under the July 8, 2013 order.  Without specifically addressing Mother's interference with Father's court-

_____

[2]  In addition, Father asserted that he anticipated Mother's failure to comply with the custody order regarding his periods of weekend custody scheduled during Spring 2014, and Easter.  While the trial court declined to address these anticipatory violations, Father's prediction materialized.  Mother consistently prevented Father from exercising his court-ordered custodial rights to T.P., and she demanded that Father travel to Florida to visit the children on her terms.  As we discuss in the body of this memorandum, the trial court eventually rewarded Mother for her continued obstinacy by revising the July 8, 2013 order in order to require Father to reengage in counseling with **both** children in Florida, and with a counselor Mother selected.

[3] During the ensuing evidentiary hearing, Mother stated that she filed a prehearing memorandum; however, the certified record belies this contention.  The record does not include any response to Father's petition and the list of docket entries confirms that no response was filed.  Moreover, to the extent that Mother submitted a prehearing memorandum to the trial court directly, that document is not contained in the certified record.  Hence, the certified record before this Court demonstrates that Mother filed neither a response to Father's contempt petition nor her own petition for modification or special relief seeking to amend the counseling provisions.

ordered custodial period with T.P. during Christmas, which was uncontested, the trial court found that Mother should be "recognized, not chastised for her efforts," *i.e.*, demanding that Father visit **both** children in Florida under her conditions in lieu of exercising his custodial rights to his son who completed counseling approximately five months earlier. Thus, it effectively suspended Father's right to exercise physical custody of T.P., even though that matter was never before it.

Additionally, the trial court concluded that counseling could not continue in Pennsylvania with Ms. Riegel due in part to Mother's intimidation of Ms. Riegel and the counselor's alleged comments to G.P. suggesting that he recant the unfounded allegations of abuse that he leveled against Father. The trial court opined that the relationship between the children and Ms. Riegel "has deteriorated and is compromised." Trial Court Opinion, 4/3/13, at 3. The court also noted that Ms. Riegel was not licensed to practice in Florida and implied that it was contrary to the children's interest to travel to Pennsylvania for counseling. Accordingly, the court replaced Ms. Riegel with Joellen Rogers, Ph.D., the children's current therapist who has had two sessions each with the children "to counsel the[m] . . . and help them acclimate to their current environment." N.T., 3/18/14, 140; Trial Court Opinion, 4/3/13, at 4.

In order to overcome the fact that neither of the parties formally requested the court to modify the July 8, 2013 custody order, the trial court

invoked Pa.R.C.P. 1915.13, regarding special relief, as authority to grant

Mother's *ad hoc* request to revise the counseling provision of the July 8,

2013 order with the purpose of substituting Ms. Riegel's counseling sessions

in Pennsylvania with Dr. Rogers's sessions in Florida.  As noted, even though

Father and T.P. completed counseling, the court also re-suspended Father's

custody with that child until Dr. Rogers determined that Father's relationship

with **both** children "has been reconciled and the children are emotionally

ready for such extended visits."  Trial Court Order, 4/3/13, at 1.  The instant

appeal followed on April 23, 2014.[4]

Father presents seven issues for our review:

1.    Did the trial court commit an error of law and/or abuse its discretion in failing to find Mother in contempt for failing to comply with the July 8, 2013 Court Order regarding (A) Father's Christmas custodial period;(B) father's weekend custodial periods on February 14-19, 2014; March 14-16, 2014; March 28-30, 2014; May 16-18, 2014 and Father's Easter custodial period from April 17-24, 2014; and (C) father's reimbursement for his share of the airline tickets paid to Mother for Father's Christmas custodial period?

2.    Did the trial court commit an error of law and/or abuse its discretion and deny Father due process in modifying the counseling provision in paragraph 4 of the July 8, 2013 Court

_____

[4] Three weeks after the trial court entered its order removing Ms. Riegel as the reunification counselor and directing that counseling occur in Florida, this Court, on April 25, 2014, filed a memorandum in response to Father's previous appeal of the trial court's October 18, 2013 order denying his petition for contempt against Mother based on her interference with the court-ordered reunification counseling with G.P.  In that April 25, 2014 order, we found Mother in contempt for failing to ensure G.P. attend reunification therapy with Ms. Riegel in Pennsylvania.

Order (the "Counseling Provision) (A) without Mother filing a modification petition with the Trial Court and without conducting a modification of custody hearing; and (B) in citing and/or relying on Pa. R.C.P. §1915.13 (Special Relief') as its basis for modifying the Counseling Provision without considering the sixteen factors enumerated in 23 Pa. §5328 in order to determine the children's best interests?

3.      Did the trial court commit an error of law and/or abuse its discretion in relying on and/or asserting its own opinions and bias in finding that (A) "G.P. and T.P. are upset with their Father and reluctant to see him, especially when thrust together with his new girlfriend and her children; and (B) "Mother's decision to relocate came as a result of the deteriorating relationship between Father and the children?"

4.      Did the trial court commit an error of law and/or abuse its discretion in finding that Mother arranged and tried to encourage visits and continued contact with Father?

5.      Did the trial court commit an error of law and/or abuse its discretion in again finding that Father's contention that Mother is interfering with reunification counseling is not supported by testimony?

6.      Did the trial court commit an error of law and/or abuse its discretion in replacing Ms. Ami Riegel as the court-appointed reunification counselor with Dr. Rogers?

7.      Did the trial court commit an error of law and/or abuse its discretion in disregarding the testimony and evidence of record that Mother threatened and intimidated Ms. Ami Riegel?

Father's brief at 3-4.

This Court has reiterated the relevant standard of review as follows:

Our scope and standard of review are familiar: "In reviewing a trial court's finding on a contempt petition, we are limited to determining whether the trial court committed a clear abuse of discretion. This Court must place great reliance on the sound discretion of the trial judge when reviewing an order of contempt." *Flannery v. Iberti*, 763 A.2d 927, 929 (Pa.Super. 2000) (citations omitted).[7]

- 7 -

---

To sustain a finding of civil contempt, the complainant must prove certain distinct elements by a preponderance of the evidence: (1) that the contemnor had notice of the specific order or decree which he is alleged to have disobeyed; (2) that the act constituting the contemnor's violation was volitional; and (3) that the contemnor acted with wrongful intent. ***Stahl v. Redcay***, 897 A.2d 478, 489 (Pa.Super. 2006). . . .

---

***P.H.D. v. R.R.D.***, 56 A.3d 702, 706 (Pa.Super. 2012).

Herein, Father contended that Mother was in contempt of the July 8, 2013 custody order due to her interference with his ability to exercise physical custody of the children during Christmas 2013. He requested that the court direct Mother to comply with the custody order and reimburse him for his share of the airfare that he paid in reliance upon her representations that she would effectuate the Christmas custody exchange. The trial court declined to address the merits of Mother's alleged violation or confront Father's request for repayment. Instead, the trial court amended the July 8, 2013 order to affirm and validate Mother's behavior.

Prior to pointing out that the trial court erred in amending the custody order during the contempt proceedings, we address the contempt issue that Father actually leveled in his petition. Father highlights that the July 8, 2013 custody order granted him custodial rights, subject to the counseling provision, during Christmas 2013. As Father had completed reunification therapy with T.P. during summer 2013, he requested that Mother comply with the custody schedule. Mother purchased airfare to travel with both

- 8 -

children from Orlando, Florida, to Allentown, Pennsylvania, on December 21, 2013. Significantly, she purchased a ticket for G.P. to travel to Pennsylvania even though he had not completed his reunification counseling. Additionally, Mother testified during the subsequent contempt hearing that, even though G.P. initially objected to visiting Father, she anticipated that G.P. would change his mind based upon his younger brother's enthusiasm. Pursuant to the terms of the July 8, 2013 order, Father reimbursed Mother $806.32, one-half of the cost of the boys' airfare, and he contacted her on the eve of the scheduled flight to confirm the location that he would meet the children. At 5:54 a.m. on December 21st, Mother contacted Father and advised him that G.P. and T.P. refused to travel to Pennsylvania and that she declined to take either child to Pennsylvania against his will. *See* Father's petition for contempt and Emergency Relief, 1/17/14, Exhibit JJ. She subsequently invited Father to travel to Florida to visit with the children on her terms. During the subsequent contempt hearing, it was revealed that T.P. made a second unfounded allegation against Father during August 2013. However, Father stresses that Mother did not invoke this allegation at that time to justify her refusal to comply with the custody schedule. Indeed, the only reason Mother proffered for flouting the custody order was that the children did not want to come.

On appeal, however, Mother provides additional bases for failing to comply with the order. Essentially, she counters that, since Father's

custodial periods were conditioned upon completing reunification counseling, she did not violate the July 8, 2013 custody order by refusing to facilitate the December 2013 custody transfer. Indeed, reminding this Court that she previously acquiesced to her then-eleven-year-old-son, G.P.'s, unilateral refusal to engage in counseling with Father, a decision that this Court subsequently adjudged to be contumacious conduct, Mother asserts that she was under no obligation to comply with the custody schedule as it relates to that child. Moreover, she asserts that since T.P. currently requires additional reunification counseling due to his most recent unfounded allegation against Father, Father also was not entitled to exercise custody of that child. Thus, she concludes that she cannot be in contempt of the custody order for declining to force the two children to visit Father during their Christmas vacation. Concomitantly, Mother challenges Father's demand for the $806.32 based upon the lack of any obligation on her part to purchase the tickets in the first place. For the following reasons, we disagree with Mother's conclusion that the trial court did not err in concluding that she was not in contempt.

Initially, we observe that Mother did not invoke any of the above referenced reasons for failing to comply with the order when she canceled the trip from Florida to Pennsylvania. At that juncture, she blamed her inaction on the children's noncompliance and her unwillingness to force them to go involuntarily. Indeed, as it relates to T.P., Mother simply failed to

comply with the custody order.  There was no finding at that time that T.P. would require additional counseling, and even if Mother believed that counseling was required, she did not file a petition seeking that relief. Additionally, while G.P. had not completed reunification therapy, due to Mother's decision to yield to his will, Mother nevertheless represented that she would permit him to visit with Father in Pennsylvania during the Christmas holiday.  Thus, while Mother cannot be found in contempt for failing to transfer physical custody of G.P. to Father during the pertinent exchange, her inaction as it relates to T.P. is unjustifiable.

During the contempt hearing, Mother testified that she refused to perform the custody exchange against her children's wishes.  Hence, Mother's implicit position is that while Father must comply with the court-ordered custody schedule, she is authorized to disregard the order to facilitate the children's desires.  Mother knowingly and willfully refused Father's court-ordered custodial period.  The fact that she proffered an alternative visitation scheme does not negate the illegitimacy of her actions.

This Court recently admonished Mother for taking the identical stance in opposition to G.P.'s reunification therapy.  In explaining that Mother was in contempt of the July 8, 2013 court order for acceding to her son's unilateral refusal to attend counseling sessions with Ms. Riegel, we stated,

> [the] testimony evidences a complete disregard for the July 8, 2013 custody order's requirement that G.P. attend reunification therapy with Father.  As G.P.'s primary physical custodian, Mother is bound to see that G.P. attends reunification therapy

- 11 -

with Father and Ms. Riegel until Ms. Riegel determines that therapy is no longer needed. By the same token, as a party subject to the terms of the July 8, 2013 custody order, Mother has an obligation to abide by its terms. Mother cannot disregard her court-ordered responsibility and disobey the requirement of reunification therapy because G.P., a child, does not want to attend.

**W.P. v. J.P.**, **supra** (unpublished memorandum at 7).

We employ the identical reasoning herein. Mother is bound by the custodial arrangement and she, rather than T.P., her seven-year-old child, has an obligation to abide by the terms of the court order irrespective of the child's aversion to its application.[5] Just as we previously explained in reversing the trial court's failure to hold Mother in contempt for her noncompliance with G.P.'s reunification therapy, we again conclude that Mother's refusal to defy T.P's wish to forgo the Christmas custody transfer is a violation of the July 8, 2013 order. By effectively empowering her son to divest Father of his custody rights, Mother knowingly and willfully violated

_____

[5] The deference Mother extends to her children is unsettling and it resonates throughout these proceedings. In addition to acquiescing to G.P.'s refusal to continue therapy with Father prior to the relocation and her casual indifference to T.P.'s rejection of Father's Christmas custody, the record bears out that Mother has difficulty even compelling the children to talk on the telephone with Father against their wishes. N.T., 3/18/14, at 105-109. Indeed, rather than simply directing the children to accept the telephone when it is handed to them, Mother had to design a tedious procedure where G.P. will talk to Father first and then when that conversation is finished, G.P. passes the telephone to an adult who, without engaging Father, gives the telephone to T.P. **Id**. at 109-110. We expect that, after being admonished by this Court on two separate occasions, Mother will finally act like a responsible adult and stop relying upon the whims of her preadolescent children in order to circumvent the unambiguous terms of the custody order.

the governing custody order. Accordingly, we *again* find that the certified record established Mother's contempt, and we conclude that the trial court's misguided decision to subsequently mold the order to comply with Mother's contumacious conduct constitutes legal error. Hence, we reverse the order denying Father's petition for contempt.

As it relates to Father's claim for the repayment of the $806 that he paid toward the children's airfare, we reject Mother's position that both parents should split the loss equally. In relation to T.P., this contention conveniently ignores the fact that Mother is the singular reason that the custody transfer did not occur. She made the unilateral decision to deny Father his custodial period with T.P., and therefore, she is solely responsible for Father's share of that child's airfare.

In addition, we observe that, although the July 8, 2013 order did not obligate Mother to transfer custody of G.P. to Father during the Christmas exchange, Father reasonably relied upon Mother's representation that the child was traveling to Pennsylvania, if only for periods of visitation. Mother accepted Father's payment for one-half of that child's traveling expenses. As Mother failed to perform as represented, Father also is entitled to be repaid his expenditures for G.P. Thus, we direct the trial court to grant Father's request for repayment of both sons' airfare totaling $806.32, and order Mother to pay Father that amount within thirty days of the date of this decision.

Having reversed the trial court's denial of Father's contempt petition, we next address the portion of the trial court order that modified the terms of the July 8, 2013 custody arrangement and substituted Ms. Riegel's reunification therapy in Pennsylvania for Dr. Rogers's counseling in Florida. Father asserts that the trial court abused its discretion in addressing the issue and modifying the custody order without providing him notice that the provision would be at issue. For the reasons that follow, we agree.

Simply stated, the pertinent *proviso* was not at issue during the custody proceedings. As outlined above, Father did not request that the trial court revisit the counseling requirement, nor did he invoke that provision in his contempt petition. Indeed, Father's challenge to the trial court's obvious deference for Mother's justification for circumventing the counseling provision had been previously litigated, and that issue was before this Court when Father filed the instant contempt petition.[6] As noted, the current petition for contempt was limited to Mother's failure to comply with the

---

[6] In that appeal, we found that Mother completely disregarded the portion of the July 8, 2013 order that directed her to ensure that G.P. attended the counseling sessions with Father and Ms. Riegel in Pennsylvania. Significantly, as it relates to the location and manner of the counseling, we observed, "there is no provision in the July 8, 2013 order that allows reunification therapy to occur in Florida or with anyone other than Ms. Riegel." **W.P. v. J.P.**, 1955 MDA 2013 (filed April 25, 2014) (unpublished memorandum at 8). Upon reversing the trial court, we directed the court to "fashion a suitable remedy" that provided the required reunification therapy pursuant to the trial court's July 8, 2013 order, *i.e.*, with Ms. Riegel, who is licensed in Pennsylvania.

custody exchange for Christmas 2013 and her anticipated failure to comply with exchanges scheduled for Spring 2014. As Mother did not file a reply to Father's contempt petition or a countervailing petition for relief, the issue regarding the viability of the counseling provision is not at issue in the case at bar.

Generally, a trial court cannot modify a custody order during contempt proceedings unless the parties are provided advance notice of that objective. *See Choplosky v. Choplosky*, 584 A.2d 340, 342 (Pa.Super. 1990) ("without a motion to modify visitation rights before it, a trial court may not permanently alter the visitation rights of [the] parties"); *Everett v. Parker*, 889 A.2d 578, 581 (Pa.Super. 2005); *Langendorfer v. Spearman*, 797 A.2d 303 (Pa.Super. 2002). In *Everett*, we concluded that the trial court violated a mother's right to due process by modifying a custody order during contempt proceedings because the mother had been denied specific notice that custody would be at stake in the contempt proceedings. We reasoned, "Formal notice and an opportunity to be heard are fundamental components of due process when a person may be deprived in a legal proceeding of a liberty interest, such as physical freedom, or a parent's custody of her child." *Everett*, *supra* at 580.

A similar due process violation occurred in *Langendorfer*, *supra*. In that case, a mother filed a contempt petition against a father and the petition failed to include any request to transfer custody of the child.

Accordingly, the order scheduling the contempt hearing did not notify either party that custody would be an issue during the contempt proceedings. Invoking our prior rationale in **Choplosky**, **supra**, we reasoned,

> we emphasize that Father's due process rights were violated by the actions taken by the court, because Father had no notice that custody would be at issue in the proceedings. "Notice, in our adversarial process, ensures that each party is provided adequate opportunity to prepare and thereafter properly advocate its position, ultimately exposing all relevant factors from which the finder of fact may make an informed judgment." **Choplosky, 584 A.2d at 342.**. Without notice to the parties that custody was at issue, the trial court could not "assume that the parties ha[d] either sufficiently exposed the relevant facts or properly argued their significance.
>
> . . . .
>
> Having concluded that a modification petition was not before the court at the time of the hearing on Mother's contempt petition and that Father did not have notice that custody would be an issue, we conclude that the court committed a clear abuse of discretion in ordering a change in custody.

**Langendorfer**, **supra** at 309 (footnote omitted).

While **Everett** and **Langendorfer** both address a modification that disturbed physical custody, the concerns that we stressed regarding insufficient notice of the modification principle resonate in this case, where, without notice, the trial court modified a provision in the custody order that was a prerequisite to Father's ability to exercise any of his custodial rights. We confronted a similar factual scenario in **Steele v. Steele**, 545 A.2d 376 (Pa.Super. 1988), and we held that the trial court erred in altering the custody arrangement to require supervised visitations and parenting classes.

As the procedural posture of the two cases are similar, further discussion of our disposition in that case is warranted.

In **Steele**, a non-custodial father of two children was engaged in a contentious custody dispute with the custodial mother. He filed a contempt petition against the mother for her alleged repeated interference with his court-ordered visitation. Upon review of evidence adduced during the litigation of father's petition, the trial court found that the father had violent and irrational tendencies that posed a threat to the child. Thus, the trial court not only denied the relief requested in Father's contempt petition, but it also modified the custody order to impose supervised visitations and parenting classes until the local Children and Youth Services ("CYS") agency found that additional unsupervised visitations were warranted. Father appealed the order alleging, *inter alia*, that the modification of the prior custody/visitation was not properly before the trial court and that the court violated his due process by addressing the issue *sua sponte*. We agreed that the trial court erred in modifying the custody order without a petition for modification before it and reinstated the former custody order. The **Steele** Court explained,

> The form of the Order modifying visitation was incorrect[.] . . .
> The due process requirements for custody proceedings must be
> closely adhered to to assure that in local as well as
> intercounty/interstate custody actions the proper foundation is
> present for the frequently hotly litigated, sometimes tumultuous,
> subsequent proceedings. Thus the custody Order entered on
> April 7, 1986 is reinstated[.]

*Id*. at 379.[7]

Herein, Father was not provided notice that the trial court would modify the custody order and impinge upon his custody rights. As noted, Father's contempt petition did not request any changes to the custody arrangement beyond Mother's compliance with the existing July 8, 2013 order, and Mother failed to file any response to Father's petition. Accordingly, the concomitant scheduling notices referenced only Father's petition.

Additionally, there was no indication in the certified record that the trial court would confront the counseling provision of the July 8, 2013 custody order. Mother failed to file a petition to modify the custody order, and to the extent that we could consider her putative prehearing memorandum that is neither listed on the docket nor included in the certified

_____

[7] Observing that the trial court could have, but apparently did not, invoke Pa.R.C.P. 1915.13 in order to award temporary, special relief in the emergency situation presented in that case, *i.e.*, the father's "violent and irrational tendencies" which placed the children at risk of harm, this Court charitably contorted the procedural framework to give temporary effect to the offending order. Under that fiction, the constitutionally-offensive order was deemed to merely suspend the prior reinstated order until CYS approved unsupervised visitations. The strained result was "the [initial] custody Order entered on April 7, 1986 is reinstated but is suspended temporarily to fulfill the directions of the trial court in its [rehabilitated] Order of December 14, 1987 (filed December 17, 1987)." ***Steele v. Steele***, 545 A.2d 376, 379 (Pa.Super. 1988). As noted *infra*, Mother invokes the ***Steele*** Court's ultimate disposition in support of the trial court order in this case. However, for the reasons we explain in the body of this memorandum, we disagree with her legal perspective.

record, there is no suggestion in the record before this Court that Mother provided Father any notice of her request in that document.[8]  Indeed, Father responded to the proposed expansion of the contempt hearing by objecting to Mother's planned modification and to Dr. Rogers's proposed supporting testimony as an ambush.  N.T., 3/18/14, 91-92, 94, 122, 124.  His objections fell on deaf ears as the trial court permitted the proposed testimony and ultimately granted the requested relief despite the lack of notice.

In accordance with our discussions in **Choplosky**, **Everett**, **Langendorfer** and **Steele**, we find that the trial court violated Father's right to due process in modifying the counseling *proviso* in the July 8, 2013 custody order during the contempt proceeding.  We reiterate that the reason for the particularized notice requirements is more than a procedural formality.  Without notice that the pertinent custody provision was at issue, Father was not prepared to litigate that dispute during the contempt

---

[8] Father referenced the prehearing memorandum on page eight of his brief, and he attached a copy of the document to his reproduced record.  However, since the prehearing memorandum is *de hors* the certified record, we cannot consider it on appeal.  **See Ruspi v. Glatz**, 69 A.3d 680, 691 (Pa.Super. 2013) (citation omitted) ("for purposes of appellate review, what is not in the certified record does not exist").  The only description that Father provided of the document in his brief was that it "did not relate to any of the four points of contempt [he] alleged in his petition."  **See** Father's brief at 8. Father's statement demonstrates that he had no notice of Mother's intent to request that the trial court modify the counseling requirement during the contempt proceedings.

proceedings he initiated against Mother, and the trial court was denied the benefit of both parties' well-prepared evidence and countervailing legal arguments.

Acknowledging the procedural shortcomings of its modification order absent a proper petition requesting said relief, the trial court invoked Pa.R.C.P. 1915.13 as a basis to modify the counseling provision to permit Mother's hand-selected counselor to perform reunification counseling with the children in Florida. Father asserts that the trial court erred in relying upon that provision to modify the custody order. For the reasons that follow, we agree.

Rule 1915.13, which is generally reserved for emergency situations, authorizes a court to grant interim, special relief either on application of a party or *sua sponte*. **See Steele**, **supra** at 378 ("Recognizing that circumstances may change abruptly, and to provide for a means to bring about emergency relief that is traditionally available under the writ of habeas corpus, the Rules of Civil Procedure provide for special relief [.]"). The rule provides as follows:

> At any time after commencement of the action, the court may on application or its own motion grant appropriate **interim** or special relief. The relief may include but is not limited to the award of temporary custody, partial custody or visitation; the issuance of appropriate process directing that a child or a party or person having physical custody of a child be brought before the court; and a direction that a person post security to appear with the child when directed by the court or to comply with any order of the court.

Pa.R.C.P. 1915.13. (emphasis added); **see also** 23 Pa.C.S. § 5323(b) ("The court may issue an interim award of custody to a party who has standing … in the manner prescribed by the Pennsylvania Rules of Civil Procedure governing special relief in custody matters.").

In **Choplosky**, **supra** at 343, we observed, albeit in *dictum*, that "'special relief' may in some cases be appropriate (and necessary) where the situation is such that, for example, temporary modification of custody or visitation rights would preserve the well-being of the children involved while the parties prepare to resolve more permanently the question of where and/or with whom the children should remain." **See Steele**, **supra** at 378 (even though a technical violation for trial court to modify custody arrangements without petition for modification before it, trial court can make temporary modifications when best interests of child require it). Thus, to the extent that the trial court envisioned a temporary modification of the custody order in the case at bar in order to facilitate the best interests of G.P. and T.P. under pressing circumstances, that decision would be justifiable pursuant to Rule 1915.13.

The dispositive issue in this case, therefore, is whether the trial court fashioned a short-term modification in response to an urgent situation. Father contends that the order replacing Ms. Riegel with Dr. Rogers is a permanent modification of the custody order and that it was not done in furtherance of any emergency relief. Mother counters that the order is, in

fact, temporary because once Dr. Rogers is satisfied that reunification counseling is no longer required, Father would be able to exercise his court-ordered custodial rights unconditionally. As discussed *infra*, we agree with Father.

Relying upon our disposition in **Steele**, which rehabilitated an offending order so that its effect was temporary, Mother argues that, since the reunification counseling is temporary in nature, the provision discharging Ms. Riegel and transferring the location of the counseling from Pennsylvania to Florida is also temporary. The defect in Mother's reasoning is patent. Notwithstanding Mother's characterization of the modification as temporary, it is obvious that the trial court permanently removed Ms. Riegel as the impartial court-appointed reunification counselor and replaced her with Dr. Rogers, Mother's hand-selected therapist, who currently treats the children for other reasons. In fact, Mother's argument acknowledges, albeit it implicitly, that the relevant modifications, *i.e.*, changing counselors and the location of the counseling, is permanent but she nevertheless elects to highlight the temporary nature of reunification counseling in general. Mother's sleight of hand is unpersuasive. In reality, the trial court **permanently** discharged Ms. Riegel, replaced her with Dr. Rogers, and transferred the therapeutic setting from Pennsylvania to Florida. Accordingly, we reject Mother's argument that the modification was justifiable under Rule 1915.13.

In further support of her position, Mother cites a portion of the record as evidence that Father failed to object to Dr. Rogers's testimony during the custody proceedings, and she cites to our Supreme Court's discussion in **Mayercheck v. Woods**, 587 A.2d 696 (Pa. 1991), for the proposition that Father was afforded sufficient due process. The record does not support Mother's waiver allegation. Initially, we observe that, contrary to Mother's protestations, Father did, in fact, object to Dr. Rogers's participation based upon surprise. N.T., 3/18/14, at 92. He also leveled a continuing objection as to the court's consideration of Mother's "Hand-select[ed] . . . reunification counselor . . . in [Florida]." **Id**. at 94. Mother's citation to the record actually belies her legal argument that this issue was waived. A cursory review of the certified record bears out that, after leveling objections to the court's consideration of this issue generally, Father acquiesced only to Dr. Rogers's qualifications and willingness to add reunification counseling between the boys and Father as an offshoot of the therapy she is already providing to G.P. and T.P. individually. Regarding Dr. Rogers's proposed testimony, Father stated,

> Your Honor, I'm not even going to object to this testimony. If this lady is going to come in and state that she's a counselor, and she's qualified in the state of Florida to be a counselor, she's done. I'm sure she's going to say I'm willing to do reunification counseling for the boys. I'll stipulate to all of that, Your honor. **The only objection is what I noted earlier on the record**.

N.T., 3/18/14, at 126 (emphasis added). Thus, Mother's assertion of waiver is meritless.

- 23 -

Her reliance upon **Mayercheck** is also unavailing. The facts and procedural posture of that case are readily distinguishable from the case at bar. In **Mayercheck**, a trial court temporarily suspended Mayercheck's custody rights after he briefly absconded with his daughter. The court also directed Mayercheck to obtain psychiatric counseling and ruled that it would not consider additional petitions to lift the suspension until the counseling was completed. Mayercheck filed a petition for special relief, which the trial court held in abeyance pending the completion of court-ordered psychiatric treatment. Thereafter, he filed an application for a writ of prohibition arguing that the trial court erred in holding in abeyance his petition for special relief seeking reinstatement of his temporally suspended custody rights. He argued that the trial court's failure to act on his petition was tantamount to a "breakdown of the legal system and a denial of due process" because it effectively precluded him from challenging the temporary suspension of his custody rights until treatment was concluded. **Id.** at 698.

In rejecting Mayercheck's argument, our High Court stated,

> On the record in this case, there is no evidence to suggest that the court below failed in any way to afford Dr. Mayercheck the protection of due process of law. He participated in all litigation before the court, cross-examined witnesses, and freely entered into consent agreements. We will not inquire behind those consent agreements. Furthermore, we find that the court acted properly in refusing to hear any additional arguments regarding custody until he complied with the order to complete a course of psychological treatment.

***Mayercheck***, ***supra*** at 698.

As Mother relies upon ***Mayercheck*** for the proposition that Father was provided adequate due process in this case, her invocation of our Supreme Court's rationale is misplaced. Unlike the procedural posture of ***Mayercheck***, where the High Court confronted a trial court's temporary abeyance of a petition for relief, the present case involves a trial court's overextension of contempt proceedings to modify a court order without notice. In contrast to ***Mayercheck***, the current case does not turn upon whether or not Father participated in all of the prior hearings or cross-examined witnesses. In actuality, as outlined by our foregoing discussion of authoritative Pennsylvania jurisprudence that is directly applicable herein, the dispositive facts in this case are that: (1) neither Mother nor the trial court provided notice to Father that the terms of the custody order would be at issue during the contempt proceedings; and (2) the trial court's modification was permanent. Accordingly, we cannot countenance the trial court's violation of Father's due process.

As we grant relief on the basis of Father's first two issues, and reverse the April 3, 2014 order that denied Father's petition for contempt and permanently modified the July 8, 2013 custody order, we do not address the third, fourth, and fifth arguments that Father raises in his brief. Those contentions all challenge the trial court's findings of fact, including that the trial court ignored Mother's continued efforts to alienate the children from

Father, her expanding interference with his ability to contact G.P. and T.P. by telephone, her informal change of the children's surname in school, and their use of her maiden name on a day-to-day basis around the Florida community. However, since our discussion of Father's last two issues influences our directions to the trial court following remand, we address those issues collectively herein.

In addition to the procedural errors that we confirmed above, Father challenges the merits of the trial court's decision to substitute Dr. Rogers for Ms. Riegal as G.P. and T.P.'s court-appointed reunification counselor. Father argues that the trial court's selection of Dr. Rogers is contrary to the spirit and the express terms of the counseling requirement. Father stresses that, in contrast to the impartial counseling that the parties envisioned, Mother's hand-picked counselor could not reasonably be considered detached, neutral, or independent. We agree that the trial court's routine endorsement of Mother's selection of Dr. Rogers as the court-appointed counselor was improper.

A brief review of the reason for reunification counseling in this case and the development of the counseling aspect of the custody order is warranted. Approximately one month after Father filed his response to Mother's February 2013 relocation petition, Mother filed a petition for special relief seeking to terminate Father's custodial periods based upon her allegations that on separate occasions G.P. and T.P. alleged that Father

touched them inappropriately. Although the allegations of abuse were ultimately recognized to be unfounded, Father stipulated to the suspension of his custodial periods pending the ensuing investigation. After the investigation was completed, the parties agreed that Father's contact would not resume until a reunification counselor confirmed that reinitiating contact was in the children's best interest. During the May 13, 2013 hearing, the parties outlined this agreement as follows:

> [Father]: . . . I believe, myself, Mr. Helvy [(Mother's counsel)], and Ms. Guzick [(Guardian *ad litem*)] have already spoken about Denise Whalen[9], if she's available, to [perform] therapeutic counseling in Pottsville. And I think we're under agreement of that.
>
> . . . .
>
> Mr. Helvy: Your Honor, I think we're all pretty sure that we want to keep the children's [existing] counseling separate from this therapeutic counseling with Father.
>
> [Father]: Right. Yeah. That's why Toni Ray would not work [for reunification], Your Honor. We're all in agreement. That's why we need to go to Denise Whalen [as the reunification counselor] who has heard nothing about this just for the short term.
>
> . . . .
>
> The Court: And she [(Ms. Whalen)] will be doing counseling with regards to the reentry of Father into the picture because of his visitation having been suspended[.]

_____

[9] Apparently, Ms. Whalen was not available. The resultant custody order appointed Ms. Riegel rather than Ms. Whalen as the impartial court-appointed reunification counselor.

N.T. 5/13/13, at 108-109.

Thereafter, the trial court recounted:

As far as the rulings are concerned with regards to the issues that we discussed . . . right before the break at lunchtime, the Court . . . will . . . order that the children continue with the counseling with Toni Ray and that . . . [Mother, Father, and the guardian *ad litem*] agree . . . that Denise Whalen will again be reintroduced for further counseling to allow Father to, adjust back with the . . . visitation with the children in accordance with the current Order of Court in light of everybody agreeing that the allegations of abuse raised are unfounded. And so we are going to allow that to proceed.

*Id*. at 163-164.

Therefore, the record confirms that, from the inception of the July 8, 2013 custody order, it was the parties' clear intent for G.P. and T.P. to receive reunification counseling from an impartial counselor who was not providing the children general counseling services. The trial court's endorsement of Mother's current candidate, Dr. Rogers, ignores the fact that Dr. Rogers fails to satisfy the agreed-upon qualities of the court-appointed reunification counselor. First, as this Court previously observed, "there is no indication of record that the parties agreed that reunification therapy could occur . . . in Florida." **W.P. v. J.P.**, **supra** (unpublished memorandum at 8 n.6). Second, in direct contrast to the independence that all of the parties envisioned, Dr. Rogers presently counsels G.P. and T.P. on aspects of their mental health unrelated to Father, and she testified unequivocally during the contempt hearing that G.P. and T.P. would be her clients during the proposed reunification counseling and Father would not. N.T., 3/18/14, at

140, 151-152. Accordingly, we find that Mother's indifference to these aspects of the agreement are obfuscations of reality, and the trial court's sanctioning of Mother's implicit repudiation of her agreement to have reunification counseling provided by a disinterested counselor in Pennsylvania is legal error. We do not doubt Dr. Rogers's professionalism, expertise, or ability to perform the reunification counseling. However, her existing relationship with G.P. and T.P. would exclude her from the list of potential candidates to perform as the court-appointed reunification counselor, even if we agreed that Florida counseling was permitted, which it is not.

We observe that this appeal is the culmination of the trial court's acquiescence in Mother's tyrannical control over the custody arrangement in derogation of the July 8, 2013 custody order. The trial court acceded to Mother's unilateral decisions regarding what she perceived to be her children's best interest. Furthermore, Mother's demonstrated deference to her preadolescent sons' disinclination to conform to the terms of the custody order only exacerbated the already difficult situation. Due to Mother's interference with G.P.'s counseling during August 2013, which this Court previously determined was tantamount to contumacious conduct, and her failure to comply with the custody schedule for Christmas 2013 and Spring 2014, which we confirm to be contumacious behavior herein, Father has been deprived of physical contact with either of his sons for approximately

one year. Mother's proposals that Father have supervised visits in Florida, pursuant to her terms and conditions, do not negate the effects of her campaign of interference with Father's custodial rights. Moreover, Mother's dissatisfaction with Ms. Riegel led to the enduring deterioration of the counseling dynamic and contributed to the current state of affairs. Assuming, *arguendo*, that Mother's concerns were legitimate, she never sought to modify the order nor requested other special relief from the trial court. Instead, she unilaterally terminated G.P.'s counseling and *de facto* suspended Father's custodial rights to T.P. Rather than admonish Mother for her noncompliance, the trial court endorsed Mother's authoritarian perspective. Absent a petition to modify, Mother was obligated to present G.P. for reunification counseling and to comply with the custody transfer schedule as it related to T.P. She did neither, and her failure to act is the direct cause of Father not seeing his children in a year. *Twice,* the trial court failed to find Mother in contempt of the governing custody order, and *twice* she continued to dictate Father's rights and obligations. We are compelled to remedy the court-sanctioned injustice.

Accordingly, having determined that Dr. Rogers is an inappropriate candidate for reunification counseling and that the order appointing her to that position is procedurally defective and must be reversed as violating Father's procedural due process, we direct the court to appoint a counselor consistent with the July 8, 2013 custody order. Specifically, the trial court is

instructed to appoint an impartial mental health professional to perform reunification counseling between Father and both of his sons in **Pennsylvania**. The counseling will occur every other weekend. The counselor will essentially replace Ms. Riegel and determine when the children are emotionally prepared for Father's exercise of partial physical custody under the terms of the existing custody schedule. Additionally, since Mother produced the current situation by unilaterally disregarding the original counseling provision in relation to G.P., and then needlessly relocating both children to Florida several months before she moved to the state, Mother is responsible for seventy-five percent of the children's transportation cost associated with the bi-weekly reunification counseling. Father will reimburse Mother for his portion of the expenses in accordance with the July 8, 2013 order.

Finally, we order the trial court to grant Father generous periods of supervised partial physical custody before and after the bi-weekly counseling sessions in Pennsylvania.[10] Our April 25, 2014 decision finding Mother in contempt for interfering with G.P.'s reunification counseling outlined the substantial acrimony between the parties and highlighted that Mother's decision to relocate the children to Florida early conflicted with her insistence

_____

[10] The current custody law uses the terms partial physical custody, shared physical custody, and supervised physical custody to describe what our jurisprudence formerly identified as visitation. *See* 23 Pa.C.S. § 5322(b).

that she desired the children to maintain a relationship with Father. We observed,

> Before ending, we note our displeasure with the course this case has taken. The dissolution of a marriage is emotionally taxing on all involved. It is eminently clear that both children in this case are in great pain over their parents' divorce. It is equally clear that Mother wants to distance herself from Father and start anew as she perceives Father has done. During the relocation hearings, Mother repeatedly testified that she wanted the children to have relationships with Father and that she was happy to facilitate their relationships with Father. ***See, e.g.***, N.T., 4/25/13, at 60, 87, 149. We note that at the relocation hearing in April 2013, Mother testified that she "ha[s] one buyer who is extremely serious and … we are in negotiations to buy the practice." N.T. 4/25/13, at 67. Yet, six months later at the hearing on Father's contempt petition, Mother testified that she did not have a serious buyer until late August, that she had not yet sold her practice, and she had no idea when a sale would occur. N.T., 10/18/13, at 11. **We question why Mother, who professes to want to preserve the children's relationships with Father, would move the children before her business affairs concluded in Pottsville**. Mother might have wanted the children to transfer to the school she selected in Florida at the beginning of the academic year (although they began the school year in Schuylkill County), but it is not uncommon for children to change schools mid-year, and surely repairing the children's relationship with Father takes precedence over any logistical hurdles that might come with a mid-year transfer. Indeed, as Mother still had not sold her practice as of the time this case was argued before this Court in late February 2014, **it seems that Father and the children could have spent the entire school year together**.

***W.P. v. J.P***, ***supra*** (unpublished memorandum at 10-11) (emphases added).

We will not tolerate Mother's continued lip service regarding her feigned desire for Father to establish and maintain a relationship with his sons. During the contempt hearing, Mother suggested that Father utilize the

time surrounding her proposed counseling sessions with Dr. Rogers to interact with G.P. and T.P. We embrace Mother's invitation for Father to reestablish a relationship with his sons in conjunction with the counseling sessions, albeit in Pennsylvania and independent of Mother's influence and oversight. The additional visits, which will be supervised by a mutually agreed-upon third party, will continue until the reunification counselor determines that it is appropriate to resume Father's custodial periods as outlined in the July 8, 2013 order. The failure to agree on a third-party supervisor will not bar Father's visits with his children. If the parties cannot agree on an acceptable third party, the trial court will appoint one. In all other respects, the July 8, 2013 order remains unaltered. The trial court has fifteen days from the entry of this memorandum to initiate reunification counseling and the supplemental visits.

Order reversed. Matter remanded with directions. Jurisdiction relinquished.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>10/20/2014</u>