J-S15031-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| K.L.S., | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| T.L.S., | |
| v. | |
| A. & E.E. | No. 1651 MDA 2013 |

Appeal from the Order entered September 18, 2014,
in the Court of Common Pleas of Columbia County,
Civil Division, at No(s): 934 of 2011

BEFORE:  LAZARUS, WECHT, and JENKINS, JJ.

MEMORANDUM BY JENKINS, J.:                    **FILED APRIL 15, 2015**

K.L.S. ("Mother") appeals, *pro se*, from the order entered on September 18, 2014, in the Columbia County Court of Common Pleas, Civil Court Division, (1) finding T.L.S. ("Father") not in contempt of its order granting Mother visitation rights, and (2) suspending Mother's visitation with their two minor daughters, K.S., born in June of 2002, and R.S., born in August of 2003 (collectively, the "Children").  We affirm the order insofar as it determines that Father was not in contempt, and vacate and remand the order to the extent it suspends Mother's visitation with Children.

The relevant facts and procedural history of this case are as follows. Mother and Father were married on October 10, 2001.  Ms. Sue Hoffman's Custody Evaluation Report, 12/26/13, at 1 ("Hoffman Report").  After they married, Mother and Father lived with A.E. and E.E. ("Maternal Grandparents") at their residence in Berwick, Pennsylvania.  *Id.*  Mother

gave birth to the couple's first daughter, K.S., in June of 2002, and to their second daughter, R.S., in August of 2003.  *Id.*  On September 1, 2003, Mother, Father, and Children moved into the marital residence, located in Bloomsburg, Pennsylvania.  *Id.*

During this time, Mother worked as a firefighter in the fire company where Father worked as the fire chief.  Trial Ct. Op., 10/23/14, at 3.  At some point in 2008, Mother began an extramarital affair with C.B., a teenage fellow-firefighter.  Hoffman Report at 2.

On May 13, 2009, police arrested Mother and charged her with multiple felony counts in connection with two arsons.  In its 1925(a) opinion, the trial court related the facts pertaining to Mother's arrest as follows:

> [Mother's] boyfriend, [C.B.], had pleaded guilty to crimes arising out of the two arsons involved in [Mother's] two cases and to several other arson related crimes in Columbia County and Lycoming County.  The two fires. . . were the "Belles" fire and the "Albertson" fire.  On March 16, 2009, [Mother] and [C.B.] had discussed setting several fires and scouted out locations, including the Belles and Albertson houses.  [Mother] and [C.B.] were firefighters.  They apparently wanted to have more opportunities to extinguish fires.  On March 16, 2009, both [Mother] and [C.B.] together went to the Belles house and set it afire.  Mr. Belles escaped uninjured. . . . On or about May 11, 2009, [C.B.] set the Albertson house afire, injuring Reuben and Pauline Albertson.  [Mother] and [C.B.] had conversations after March 16, 2009, and before the fire was set at the Albertson location.  [Mother] did not go to the Albertson fire location or help set the house afire.

Trial Ct. Op., 10/23/14, at 2 (citation omitted).

On January 28, 2011, following trial, a jury convicted Mother of three counts of Criminal Conspiracy to Commit Third Degree Murder, ten Arson-related counts, and one count of Burglary.  *Id.*  On April 17, 2011, Mother

- 2 -

was sentenced to a term of incarceration of seventeen to thirty-four years. *Id.* She is currently incarcerated at the State Correctional Institution at Cambridge Springs ("SCI Cambridge Springs"), located in Crawford County, Pennsylvania. Master's Report, 8/2/13. Father has since filed for divorce. *Id.*

The instant custody matter began on June 17, 2011 when Mother filed a complaint seeking visitation with Children. On June 20, 2011, Maternal Grandparents, who visited regularly with Children until Father discontinued contact upon Mother's incarceration, also filed a complaint seeking partial physical and shared legal custody of Children. According to Father, he terminated Maternal Grandparents' contact because of their statements in defense of Mother regarding her criminal convictions, which Father believed upset the Children. Master's Report, 8/31/11. The trial court consolidated the two complaints and referred the matter to a Specially Appointed Master (the "Master").

On August 24, 2011, the Master held a conference with the parties. On August 31, 2011, the Master issued a report recommending that Father have primary physical and legal custody of Children and that Maternal Grandparents have partial physical custody of Children.[1] Master's Report, 8/31/11. On September 1, 2011, the trial court issued an interim order ratifying the Master's recommendations and allowing the parties twenty days to file objections to the recommendations. On September 15, 2011, both

---

[1] Although it was still pending, the Master's Report paid little attention to Mother's complaint. *See* Master's Report, 8/31/11. The Report concentrated instead on explaining its recommendation to award primary physical and legal custody to Father and partial physical custody to Maternal Grandparents. *Id.*

Father and Maternal Grandparents filed exceptions to the Master's recommendations. Maternal Grandparents also filed a petition for civil contempt against Father for failure to comply with the visitation schedule set forth in the trial court's order.

The trial court held a pre-hearing conference on October 7, 2011, at the conclusion of which it denied all exceptions as well as Maternal Grandparents' contempt petition. The trial court awarded two visitation make-up days to Maternal Grandparents. The trial court further directed that a licensed psychologist conduct a custody evaluation to address (1) whether it was in Children's best interest to visit Mother in prison, and (2) the appropriate frequency of Maternal Grandparents' periods of physical custody of Children. Order, 10/12/11.[2] On November 29, 2011, the trial court issued an order directing Father to schedule a conference call with the court-appointed psychological evaluator and Maternal Grandparents. Order, 11/30/11.

On January 25, 2013, Mother notified the trial court by letter that she would no longer be represented by counsel for Maternal Grandparents and would be proceeding *pro se*. That same day, Mother filed a petition for civil contempt against Father for failure to proceed with the psychologist's custody evaluation as required by the trial court's order. Thereafter, the trial court issued a rule to show cause why Father should not be found in contempt and a hearing on the matter was scheduled for March 25, 2013.

---

[2] While not explicitly mentioning Mother's complaint, presumably the trial court's order following the hearing on Father and Maternal Grandparents' exceptions to the Master's Report disposed of both Mother's and Maternal Grandparents' complaints, which the court previously consolidated.

On February 6, 2013, Mother filed a motion requesting visitation with Children and a separate motion requesting that the trial court allow her telephone and written correspondence with Children. On February 8, 2013, the trial court issued an order, deferring action on Mother's motions until resolution of the custody evaluation. On March 11, 2013, Mother filed a motion requesting documents from the therapists/psychological professionals that had been treating Children prior to her incarceration. Mother also filed a motion requesting that she be allowed to participate via telephone/video conference in the contempt hearing scheduled for March 25, 2013. On March 19, 2013, the trial court issued an order denying Mother's motion to participate in the contempt hearing and granting her motion for documents, directing Father to provide such documents to Mother within 30 days. Subsequently, the contempt hearing was continued to an undetermined future date to be scheduled by praecipe.

By letter dated May 7, 2013, Maternal Grandparents requested that the trial court review the existing custody arrangement previously formulated by the Master, with a view to increasing Maternal Grandparents' periods of partial physical custody. A custody review conference with the Master was scheduled for July 31, 2013. On June 17, 2013, Mother filed a petition for civil contempt against Father for failure to provide her with the aforementioned documents, as required by the trial court's order. On June 24, 2013, Mother filed a praecipe requesting that the previously continued contempt hearing be placed on the next list of arguments before the trial court. The trial court then scheduled a contempt hearing for August 1, 2013.

On July 31, 2013, Father informed the trial court by letter that he met with the court-appointed psychological evaluator on February 19, 2013, and that Children met with the psychological evaluator on February 26, 2013. That same day, the custody review conference before the Master took place. On August 1, 2013, the trial court held the contempt hearing. Immediately following the hearing, the trial court issued an order finding Father not in contempt, changing the court-appointed psychological evaluator to Ms. Hoffman, and directing Father to arrange for a custody evaluation with Ms. Hoffman as soon as possible. Order, 8/2/13. The trial court also stated that it would hold a telephone conference with Mother as well as a conference with Father and Maternal Grandparents upon receipt and review of Ms. Hoffman's report. *Id.* On August 2, 2013, the Master issued his report from the July 31, 2013 custody review conference, in which it recommended that the custody arrangement in place should remain unchanged. Master's Report, 8/2/13. On August 7, 2013, the trial court issued an order, ratifying the Master's recommendations. On August 20, 2013, Maternal Grandparents filed exceptions to the Master's recommendations.

On December 26, 2013, Ms. Hoffman submitted her custody evaluation report to the trial court. On April 9, 2014, the trial court held a conference to address Maternal Grandparents' exceptions as well as the existing custody arrangement in light of Ms. Hoffman's report. At the conclusion of the conference, the trial court issued an order denying Maternal Grandparents' exceptions and instructing all of the parties to comply with Ms. Hoffman's recommendations. Order, 4/9/14. Specifically, the trial court granted Mother visitation with Children to occur in prison, with

the first visit to occur within 30 days of the order, and that such visits shall occur at least every other month from 8:45 a.m. to 3:30 p.m.[3] *Id.*

On April 26, 2014, Father took Children to SCI Cambridge Springs to visit with Mother, arriving at 12:00 p.m. instead of 8:45 a.m., as required by the trial court's order. On May 6, 2014, Mother filed a petition for civil contempt against Father for failure to arrive for the visit at the court-designated time as well as a petition requesting modification of the existing custody order. On May 14, 2014, the trial court denied Mother's petition for modification and, on June 19, 2014, dismissed her contempt petition without a hearing. The next visit with Mother was scheduled to take place on June 22, 2014, however, upon arriving at SCI Cambridge Springs, Children refused to enter the prison to see Mother and, as a result, the visit was cancelled. On July 3, 2014, Maternal Grandparents filed a praecipe for a hearing, seeking to increase their periods of partial physical custody. On July 7, 2014, Mother filed another petition for civil contempt against Father for failure to proceed with visitation as scheduled. Again, Mother's petition

---

[3] The trial court's ordered, in relevant part:

> 3. The [c]ourt further DIRECTS that the recommendation [of Dr. Sue Hoffman in her report of December 26, 2013] is modified to the extent that [Father] shall transport the children to the State Correctional Institution to visit the children, although the [maternal] grandparents shall actually enter the prison with the children to effectuate the visitation. Father, at his option, may accompany the children also into the prison, although he shall remain in the waiting area during the visitation, if possible. Said visitation shall be designed to maximize the time available at the prison for the visitations which this Court understands are from 8:45 a.m. until 3:30 p.m. on visitation days.

Trial Court Order, April 9, 2014.

was dismissed without a hearing on July 10, 2014. The next visit with Mother was scheduled to occur in August 2014 but did not take place. On July 23, 2014, Maternal Grandparents filed a motion for contempt against Father, on Mother's behalf, for failure to proceed with visitation as scheduled with respect to Mother.

On September 17, 2014, the trial court held a contempt hearing. Although the trial court had arranged for Mother to appear by telephone conference from prison, she was placed on hold without the trial court or the other parties realizing it and, as such, did not participate in the hearing. Trial Ct. Op., 10/23/14, at 4. During the hearing, the trial court interviewed Children, inquiring into each child's opinion of having to visit Mother in prison. During her interview, K.S. stated, "I really don't want to go up there." N.T., 9/17/14, at 3. When asked by the trial court whether she cared about seeing Mother, K.S. responded, "No, after what she's done and what she didn't care about us, I do not want to go up there ever." *Id.* Similarly, R.S. testified:

> I don't want to go and I will not go. It sucked the first time I went and the second time I went I wasn't even going to go in. I got out of the truck, went over hugged my pap, walked over to my gram, said "Hi, how are you doing? I'm not going in 'cause the first time sucked. Bye." Got back in the truck and left.

*Id.* at 8. At the conclusion of the hearing, the trial court issued the underlying order, in which it ruled as follows:

> [A]fter having talked to the [Children] concerning the motion for contempt in this matter, the [trial court] finds [Father] not in contempt. The [trial court] notes that a finding of contempt must be based on willfulness. The [trial court] finds that in light of the spoken attitude of the [Children], [] the [trial court] cannot make a finding of willfulness. Although the [trial court]

- 8 -

believes it is in the best interest of [Children] to have regular contact with [Mother] pursuant to [Ms. Hoffman's] findings and recommendations, the [trial court] acknowledges that the facts in this particular situation are extraordinarily complicated and the [inter-]personal relationships have become exceedingly dysfunctional because of the facts. The [trial court] finds that there is a prima facie showing from the [Children] that forcing them to have contact with [Mother] at this point would be futile and counterproductive. The portion of the [c]ourt [o]rder requiring the same is suspended. The [trial court] strongly suggests that [Father] make arrangements for [Children] to undergo counseling to address the issues in this matter. In the [trial court's] opinion, failure to do so may have negative ramifications for [Children] in the future. . . . [E]xcept as amended hereby, the controlling custody [o]rder in this matter shall remain in full force and effect. . . and the parties are directed to comply with the terms thereof.

Trial Ct. Op., 9/18/14, at 1-2 (unpaginated). On October 1, 2014, Mother filed a timely notice of appeal but failed to simultaneously file a concise statement of errors complained of on appeal, in contravention of Pa.R.A.P. 1925(a)(2)(i) and (b).[4] On October 17, 2014, Mother filed a concise statement of errors complained of on appeal.[5]

---

[4] On October 1, 2014, Mother also filed a petition requesting that Father undergo a mental examination, a motion for transcripts of the September 17, 2014 contempt hearing, a motion for leave to engage in discovery, and a motion for appointment of a guardian *ad litem*. On October 3, 2014, the trial court issued an amended order, appointing attorney John McDaniel as guardian *ad litem*, granting Mother's motion for transcripts, and denying both Mother's petition for a mental examination of Father and her motion for leave to engage in discovery.

[5] Although Mother failed to comply with Pa.R.A.P. 1925(a)(2)(i) and (b), relating to children's fast track appeals, we decline to dismiss or quash her appeal. *See In re K.T.E.L*, 983 A.2d 745, 747 (Pa.Super. 2009) (holding that the failure to file a concise statement of errors complained of on appeal **with** the notice of appeal will result in a defective notice of appeal, to be disposed of on a case-by-case basis). Here, Mother filed the Rule 1925(b) statement sixteen days after filing the notice of appeal. However, since the misstep was not prejudicial to any of the parties and did not impede the trial

Mother purports to assert eighteen (18) issues on appeal.[6]  We distill

her prolix issues to two claims bearing on our determination of this appeal:

_____

court's ability to issue a thorough opinion, the procedural error was harmless.  *Cf. J.P. v. S.P.*, 991 A.2d 904 (Pa.Super. 2010) (appellant waived all issues by failing to timely comply with the trial court's direct order to file a concise statement).

[6] In her brief on appeal, Mother raises the following issues for our review:

> 1. Did the [t]rial [c]ourt err in not notifying [Mother] of the date and time of the [September 17, 2014 contempt hearing], as [Mother] is *pro se* and a party-in-interest[?]
>
> 2. Did the [t]rial [c]ourt err in not finding [Father] in [c]ontempt, as he failed to support, and in fact discouraged [Children] from visiting [Mother] per the [c]ourt [o]rder[?]
>
> 3. Did the [t]rial [c]ourt err in its findings, as Father has systematically embarked on a course of conduct to discourage [Children] from visiting Mother pursuant to the [c]ourt [o]rder[?]
>
> 4. Did the [t]rial [c]ourt err in not conducting a full hearing on the contempt petition, as none of the parties were permitted to testify[?]
>
> 5. Did the [t]rial [c]ourt err in not allowing Mother to participate in the September 17, 2014 contempt hearing, as she was a party-in-interest[?]
>
> 6. Did the [t]rial [c]ourt err in not allowing Mother to participate in the September 17, 2014 contempt hearing, testify[,] and question witnesses, as she is *pro se*[?]
>
> 7. Did the [t]rial [c]ourt err in considering and arriving at its determination partially based on the content of [Ms. Hoffman's report] while denying the litigants the opportunity to cross-examine [Ms. Hoffman] in open court[?]

8. Did the [t]rial [c]ourt err in suspending the [c]ustody [o]rder of April 11, 2014, as this is not a proper remedy in a contempt proceeding[?]

9. Did the [t]rial [c]ourt err in suspending the order requiring visitation with Mother at [SCI Cambridge Springs], as Mother, who is the primary party in interest, was not permitted to participate in the [September 17, 2014 contempt hearing][?]

10. Did the trial court err in entering a[] [custody order] in the September 17, 2014 hearing[,] as the hearing was on [Maternal Grandparents'] contempt petition [and] the [trial court] lacked jurisdiction[?]

11. Did the trial court err in dismissing [Mother's] contempt petition[,] filed on May 2, 2014[,] without [a] hearing[?]

12. Did the trial court err in dismissing [Mother's] contempt petition[,] filed [on] June 30, 2014[,] without [a] hearing[?]

13. Did the trial court [j]udge, the Honorable [Thomas A. James, Jr.], err in not recusing himself from [the] current case due to his prior involvement in [Mother's] [p]rotection from abuse matters[] and criminal prosecution[?]

14. Did the trial court [j]udge, the Honorable [Thomas A. James, Jr.], err in expressing prejudice and bias against [Mother] and in favor of [Father] prior to and during the September 17, 2014 contempt hearing[?]

15. Did the [t]rial [c]ourt [j]udge, the Honorable [Thomas A. James, Jr.], err in conducting [*ex parte*] communications with counsel for [Father] and with counsel for [Maternal Grandparents] before and during the September 17, 2014 [contempt hearing][?]

16. Did the [t]rial [c]ourt err in conducting an [*ex parte*] hearing with the opposing counsels when [Mother] was

(1) that the trial court erred in finding Father was not in contempt (*see* Claims 2, 3, and 4), and (2) that the trial court erred by suspending her visitation with Children without allowing her an opportunity to be heard or notice and a hearing tailored specifically to custody modification (*see* Claims 5, 6, 8, 9, and 16).  We find no abuse of discretion in the trial court's finding that Father was not in contempt.  However, we agree with Mother that the trial court erred by *sua sponte* modifying the custody order.

As to Mother's first claim, it is well-established that "each court is the exclusive judge of contempts against its process."  *G.A. v. D.L.*, 72 A.3d 264, 269 (Pa. Super. 2013) (citation omitted).  To that end, our scope and standard of review are familiar: "In reviewing a trial court's finding on a contempt [motion], we are limited to determining whether the trial court

---

available by telephone, and in fact had been contacted by Ms. Kristen Holterling of the Honorable [Thomas A. James, Jr.'s] office and placed on hold for approximately forty (40) minutes with the expectation of participating in the September 17, 2014 contempt hearing, however, was excluded from participation[?]

17. Did the trial court err in not granting [Mother's] motion to compel compliance with a [s]ubpeona for telephone records in the [p]ossession of the Department of Corrections at [SCI Cambridge Springs], which contained documented evidence relevant to the disposition of this contempt matter[?]

18. Did the trial court err by failing to completely develop the record by failing to include in the transcripts the entire content of the proceedings conducted on September 17, 2014, and by not allowing the testimony or evidence of non-interested/non-familial parties[?]

Mother's Brief at 4-6.

committed a clear abuse of discretion.  This Court must place great reliance on the sound discretion of the trial judge when reviewing an order of contempt." *Flannery v. Iberti*, 763 A.2d 927, 929 (Pa. Super. 2000) (citations omitted).

Here, the trial court determined that Father's conduct did not constitute willful disregard of its previous order and, thus, decided to not hold Father in contempt.  We find that there is ample evidence in the record to support the trial court's conclusion and, accordingly, discern no abuse of discretion in its finding that Father was not in contempt.

We now turn our attention to Mother's due process claim.  It is well-settled that "[p]rocedural due process requires, at its core, adequate notice, opportunity to be heard, and the chance to defend oneself before a fair and impartial tribunal having jurisdiction over the case." *Garr v. Peters*, 773 A.2d 183, 191 (Pa. Super. 2001) (citations and quotation marks omitted). "Due process is flexible and calls for such procedural protections as the situation demands." *In re Adoption of Dale A., II*, 683 A.2d 297, 300 (Pa. Super. 1996) (*citing* *Mathews v. Eldridge*, 424 U.S. 319, 334, (1976)).

As we have explained, notice and an opportunity to be heard are a crucial aspect of child custody proceedings:

> Formal notice and an opportunity to be heard are fundamental components of due process when a person may be deprived in a legal proceeding of a liberty interest, such as physical freedom, or a parent's custody of her child.  Both notice and an opportunity to be heard must be afforded at a meaningful time in a meaningful manner.  As previous panels of this Court have explained:  [n]otice, in our adversarial process, ensures that **each party is provided adequate opportunity to prepare and thereafter properly advocate its position**, ultimately

-13-

> exposing all relevant factors from which the finder of fact may make an informed judgment.

*Everett v. Parker*, 889 A.2d 578, 580 (Pa. Super. 2005) (citations and quotation marks omitted) (emphasis supplied).

At the September 17, 2014 hearing, the trial court had before it only Maternal Grandparents' motion for contempt filed on Mother's behalf. Notwithstanding the fact that no petition for modification was pending, at the conclusion of the hearing, the trial court proceeded *sua sponte* to modify its previous custody order, entered on April 11, 2014, suspending the visitation rights granted to Mother by that order. None of the parties were on notice that such modification was sought, or that it could be ordered.

In *Langendorfer v. Spearman*, 797 A.2d 303 (Pa. Super. 2002), this Court expressly held that a trial court "may not permanently modify a custody order without having a petition for modification before it." *Id.* at 308. In that case, the mother filed a contempt petition alleging that the father willfully violated a custody order. *Id.* at 305-06. In a subsequent order, the trial court found the father to be in contempt, granted the mother sole legal and primary physical custody, and restricted the father's visitation with the children to supervised visits. *Id.* at 306-07. We found that the father's due process rights were violated because he had no notice that custody was at issue. *Id.* at 309. Our words in *Langendorfer* bear reproducing at length here:

> In the instant case, Mother's petition for contempt in no way implicates custody, i.e., she did not request any change in custody. Furthermore, the order to appear received by the parties from the court that scheduled the contempt hearing did not notify the parties that custody was at issue. Also the record and more particularly the docket do not indicate that Mother's contempt petition and Father's petition for temporary

-14-

modification were consolidated for any purpose. Moreover, the transcript of the hearing reveals that only the contempt petition was before the court. Finally, the court's order, quoted above and delivered from the bench at the conclusion of the hearing, references only Mother's contempt petition and Father's response thereto. Accordingly, we conclude that only Mother's contempt petition was before the court on March 5, 2001.

In addition to the foregoing, we emphasize that Father's due process rights were violated by the actions taken by the court, because Father had no notice that custody would be at issue in the proceedings. "Notice, in our adversarial process, ensures that each party is provided adequate opportunity to prepare and thereafter properly advocate its position, ultimately exposing all relevant factors from which the finder of fact may make an informed judgment." [**Choplosky v. Choplosky**, 584 A.2d 340, 342 (Pa. Super. 1990).] Without notice to the parties that custody was at issue, the trial court could not "assume that the parties ha[d] either sufficiently exposed the relevant facts or properly argued their significance. Consequently neither we nor the trial court can make an informed, yet quintessentially crucial judgment as to whether it was in the best interests of the [child] involved to give sole legal [and physical] custody to the mother." **Id.** at 343.

Having concluded that a modification petition was not before the court at the time of the hearing on Mother's contempt petition and that Father did not have notice that custody would be an issue, we conclude that the court committed a clear abuse of discretion in ordering a change in custody.

**Id.** at 308-09 (footnotes omitted). In short, to modify a custody arrangement, an interested party must petition the trial court for modification. Thereafter, if the trial court schedules a hearing on the modification petition, the opposing party is on notice that custody modification will be at issue, in fact and in law.

Here, as in **Langendorfer**, Mother had no notice that custody was at issue and, thus, had no opportunity to prepare for a modification hearing. Consequently, Mother was denied her due process rights to notice and a

hearing. Furthermore, although the trial court had arranged for Mother to appear at the September 17, 2014 hearing by telephone conference from prison, she was placed on hold without the trial court or the other parties realizing it. As such, Mother was denied the opportunity to be heard and to participate in the hearing. In its opinion pursuant to Pa.R.A.P. 1925(a), the trial court characterizes this oversight as "harmless error" because it would not have allowed Mother to question Children during the hearing. Trial Ct. Op., 10/23/14, at 4. We disagree with the trial court's reasoning in this regard. While we acknowledge that the trial court would have been well within its discretion in precluding Mother from questioning the Children, Mother could nevertheless have testified or presented evidence in her own right at the hearing. At the very least, Mother could have argued against the trial court's *sua sponte* modification of her visitation rights.

We conclude, therefore, that the trial court abused its discretion and deprived Mother of her due process rights to notice and a hearing by suspending Mother's visitation with Children where no modification petition was pending before the court. .

Accordingly, we affirm the trial court's September 18, 2014 order insofar as it finds that Father was not in contempt. We vacate and remand the order, however, to the extent it suspends Mother's visitation with Children.

Order affirmed in part and vacated in part, as set forth hereinabove. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/15/2015