Christine FLANNERY, Appellee,

v.

Walter P. IBERTI, Appellant.

Superior Court of Pennsylvania.

Argued Sept. 12, 2000.
Filed Dec. 1, 2000.

John C. Howett, Harrisburg, for appellant.

Allen C. Welch, Harrisburg, for appellee.

Before JOHNSON, TODD, and TAMILIA, JJ.

TODD, J.:

¶ 1 Walter P. Iberti ("Father") appeals from the November 5, 1999 Order of the Court of Common Pleas of Cumberland County denying his petition for civil contempt.[1] The petition alleged that Christine Flannery ("Mother") repeatedly failed to comply with the trial court's custody order of June 18, 1998, as amended July 16, 1998 and December 14, 1998. Upon review, we affirm.

¶ 2 The parties are the biological parents of Elizabeth, born August 22, 1990. Before their 1992 separation, the family lived together in California, where Father

---

1. We note that a trial court's denial of a civil contempt petition is appealable, *Basham v. Basham,* 713 A.2d 673, 674 (Pa.Super.1998), in contrast to a finding of not guilty of criminal contempt, to which double jeopardy attaches thereby barring appellate review. *Cipolla v. Cipolla,* 264 Pa.Super. 53, 398 A.2d 1053, 1056–57 (1979).

still resides. In 1992, Mother relocated to Pennsylvania and initiated a custody action in Cumberland County. By order of June 24, 1993, Mother was awarded primary physical custody with Father receiving periods of partial custody. In 1997, Mother was convicted of shoplifting and Father assumed immediate primary physical custody effective September 1, 1997.

¶ 3 On June 18, 1998, the trial court issued an order incorporating an agreement awarding primary physical custody to Father and periods of partial custody to Mother in Pennsylvania. The order specified certain conditions with which Mother was required to abide during her visitation periods. In particular, Mother was required to provide Father with a telephone number with an answering machine or a 24–hour answering service so that he could leave messages and information for Elizabeth.

¶ 4 On July 16, 1998, the custody order was modified to include additional requirements of Mother based upon certain of her actions involving her custody periods with Elizabeth. Specifically: 1) Mother was required to give advance notice if Elizabeth were to spend more than one day away from Mother's residence during her visits with Mother; 2) Mother was to refrain from drinking alcohol or patronizing establishments with a liquor license during Elizabeth's visits; 3) Mother was not to operate a motor vehicle with Elizabeth as a passenger; and 4) Mother was not to violate any conditions of her probation stemming from the shoplifting conviction, including illicit drug use.

¶ 5 After a series of significant infractions of the custody order by Mother, including alcohol usage while in Elizabeth's presence, operation of a motor vehicle and failure to comply with the communication requirements mandated by the custody order, Father filed a petition for contempt on October 28, 1998. Following a hearing, the trial court issued an order finding Mother in contempt and modifying the custody order to require that Mother noti-fy Father of any positive drug tests. Mother continued to violate the custody order, as amended, in numerous ways, resulting in Father filing another petition for contempt and modification on February 19, 1999, which is the subject of this appeal. Mother simultaneously filed a contempt petition against Father.

¶ 6 The trial court conducted a full hearing on June 9, 1999, and subsequently ordered on November 5, 1999 that all prior custody orders regarding the parties be vacated and replaced with the current order awarding legal and primary physical custody of Elizabeth to Father. The court further ordered that Mother's only visitation of Elizabeth was to take place within a 50–mile radius of Elizabeth's residence with Father in California. The order specified that Mother is to consume no alcoholic beverages while Elizabeth is in her custody. Other provisions of the order allocate Mother's days of partial custody and the rules by which the parties are to communicate with each other. In addition to modifying the custody arrangements, the trial court simultaneously dismissed the parties' cross-petitions for contempt of the court's June 18, 1998 custody order. Only Father appealed the trial court's denial of his contempt petition.

¶ 7 Father raises one issue for our review: Whether the trial court abused its discretion in dismissing Appellant's petition for contempt when the record contains clear, overwhelming evidence of Appellee's willful disobedience of the court's custody order of June 18, 1998, as amended by its July 16, 1998 and December 14, 1998 orders. (Appellant's Brief at 4.) In an opinion written pursuant to Pennsylvania Rule of Appellate Procedure 1925, the learned trial judge, the Honorable Edgar B. Bayley, in modifying the underlying custody order significantly, dismissed Father's contempt petition as "de minimis collateral surplusage", explaining that the significant compelling substantive issues raised by Father had been addressed by the custody

modification. (Trial Court Opinion, 12/22/99, at 2.)

¶ 8 A court may hold a party in civil contempt for the willful disobedience of a custody order. 23 Pa.C.S.A. § 4346; *see also* Pa.R.C.P. 1915.12. In reviewing a trial court's finding on a contempt petition, we are limited to determining whether the trial court committed a clear abuse of discretion. *See Mueller v. Anderson,* 415 Pa.Super. 458, 609 A.2d 842, 843 (1992). This Court must place great reliance on the sound discretion of the trial judge when reviewing an order of contempt. *See Goodman v. Goodman,* 383 Pa.Super. 374, 556 A.2d 1379, 1391 (1989). The characteristic that distinguishes civil from criminal contempt is the ability of the contemnor to purge himself of contempt by complying with the court's directive. If he is given an opportunity to purge himself before imposition of punishment, the contempt order would be civil in nature. *See Diamond v. Diamond,* 715 A.2d 1190, 1194 (Pa.Super.1998).

¶ 9 Our review of the record in this matter, the June 9, 1999 hearing testimony of Father's witnesses, as well as the testimony of Mother herself, leads us to the undeniable conclusion that Mother willfully violated the custody order of June 18, 1998, as amended, in a variety of ways. Mother consumed alcohol in violation of her probation and the custody order, frequented drinking establishments during her periods of partial custody with Elizabeth, drove while Elizabeth was a passenger, tested positive for cocaine, and failed to provide advance notice of new day care providers and times that Elizabeth would spend more than one day away from Mother's residence during her visits.

¶ 10 However, our review of the record in its entirety also leads us to conclude that the parties have made a career out of legally antagonizing one another through custody litigation concerning Elizabeth. Judge Bayley, in dismissing the contempt petitions of both parties, acknowledged that the expressed concerns in Father's contempt petition had been addressed by the court's modification of the underlying custody order. We agree. In *Rosenberg v. Rosenberg,* 350 Pa.Super. 268, 504 A.2d 350 (1986), we stated:

> Frequent and willful disobedience of a court order concerning a parent's right of visitation is a factor to be considered in an application for modification of a custody order. Continued and repeated contemptuous behavior which interferes with visitation may constitute a change of circumstances sufficient to support a change in custody.

*Id.* at 352 (citations omitted).

¶ 11 Here, rather than once again holding Mother in civil contempt of the court's previous custody order, a remedy that heretofore has had no impact on Mother's behavior, the trial court wisely modified the custody order by awarding legal and primary physical custody of Elizabeth to Father and by requiring that all periods of visitation with Mother be conducted within fifty miles of Father's home. Moreover, we note that our Supreme Court has held that while civil contempt proceedings are appropriate to enforce compliance with a decree of court, the crucial question to determine the propriety of a civil contempt order is whether one has the present ability to comply with conditions set by the court to purge himself of contempt. *See Barrett v. Barrett,* 470 Pa. 253, 262, 368 A.2d 616, 620 (1977); *see also Brocker v. Brocker,* 429 Pa. 513, 521, 241 A.2d 336, 339 (1968) (court must consider the character and magnitude of the harm threatened and the probable effectiveness of any suggested sanction in bringing about the result desired).

¶ 12 Here, the violative actions complained of already have occurred. Mother can take no action now to take back her infractions of the June 18, 1998 custody order. Obviously familiar with the parties' long history of contentious litigation and desiring not to fuel it, Judge Bayley prudently anticipated future noncompliance on

Mother's part by awarding Father primary legal and physical custody and requiring that all of Mother's visitation occur near Father. This more stringent action obviated the need for finding Mother in contempt of the prior custody order, while adequately addressing Father's legitimate concerns for Elizabeth's safety going forward.

¶ 13 We wish to underscore that our holding today is in no way intended to excuse or condone Mother's repeated flagrant violations of the June 18, 1998 custody order, particularly her use of illegal drugs and alcohol, as well as her various legal entanglements. Although we are convinced that Mother clearly violated the June 18, 1998 custody order in a number of ways, Judge Bayley's sound approach in substantively addressing past violations by modifying the custody arrangement for the future was an appropriate method of handling Mother's repeated recalcitrance and Father's justifiable concerns for Elizabeth's safety. Accordingly, we find that the trial court's dismissal of Father's petition for contempt was not an abuse of discretion.

¶ 14 Order affirmed.