J-A29028-15

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| J.R., | IN THE SUPERIOR COURT OF |
| --- | --- |
| Appellant | PENNSYLVANIA |
| v. | |
| L.T., | |
| Appellee | No. 494 WDA 2015 |

Appeal from the Order March 19, 2015
In the Court of Common Pleas of Allegheny County
Family Court at No(s): FD 07-003697-004

BEFORE: FORD ELLIOTT, P.J.E., BOWES AND MUSMANNO, JJ.

MEMORANDUM BY BOWES, J.:                **FILED JANUARY 22, 2016**

J.R. ("Father") appeals the March 19, 2015 order wherein the trial court denied his exceptions to the report and recommendation filed by custody hearing officer, Laura A. Valles, Esquire, disposing of his petition for contempt against L.T. ("Mother"). We affirm.

J.R., Jr. was born out of wedlock during April 2007 of Mother and Father's relationship. Since July 27, 2010, Mother and Father have been parties to a contentious custody dispute that culminated in the March 24, 2015 custody order that awarded shared legal and physical custody.[1] The instant appeal stems from the recommended contempt order issued by

_____

[1] We disposed of Father's appeal from the final custody order in a separate memorandum filed at 495 WDA 2015.

Hearing Officer Valles while the custody matter was pending. Prior to the resolution of the custody litigation, Mother and Father utilized a series of consent orders to establish the parameters of the custody arrangement. Pursuant to the relevant iteration of the custody agreement, which was entered on February 5, 2014, the parties shared physical custody of J.R., Jr. on an alternating weekly basis. In addition to establishing the custodial periods, Mother and Father agreed to, *inter alia*, (1) provide access to academic and medical records; (2) cooperate with their son's Individual Educational Plan ("IEP"); (3) provide notice of trips outside of Allegheny County, Pennsylvania; (4) utilize the co-parenting tool "Our Family Wizard" for correspondence; (5) make J.R., Jr. available to the non-custodial parent for daily telephone contact. **See** Custody Consent Order, 2/5/14, at 1-8.

On October 29, 2014, Father filed a *pro se* petition for special relief alleging that Mother was in contempt of the February 2014 consent order for violating the above-referenced aspects of the accord. In addition to requesting that the hearing officer order penal sanctions against Mother, Father sought "**all** fees associated with the preparation . . . and attendance at any . . . hearing" associated with his petition. Petition for Special Relief, 10/29/14, at 5 (emphasis in original). During the ensuing hearing, Father added several additional grounds for contempt of the February 2014 order, and he asserted that Mother was also in contempt of a different order

- 2 -

directing her to timely pay his attorney's fees associated with a prior petition for relief.

Father testified on his own behalf. He leveled a litany of complaints that assailed Mother's alleged failure to provide advance notice of required non-emergency medical care and to inform him of her decision to relocate from the Fox Chapel School District. He also challenged Mother's conduct during J.R., Jr.'s IEP meetings, her dilatory actions in causing J.R., Jr. to miss a little league baseball game, and having to reschedule vision and speech therapy sessions. Father also challenged Mother's unilateral decision to enroll their son in the Summer Learning Academy Program and then failing to transport him directly from that program to Father's residence. Additionally, he claimed that Mother was disrespectful, avoided his attempts to maintain daily telephone contact with J.R., Jr., and failed to utilize Our Family Wizard. Mother testified and introduced two exhibits that 1) outlined the notice that she provided Father regarding her move from the Fox Chapel School District; and 2) revealed the tenor of Father's exchanges with her on the Our Family Wizard website.

On November 14, 2014, Hearing Officer Valles issued a recommended order granting Father's petition, in part, and denying it in part. The recommendation acted as a temporary order of court pending the resolution of any anticipated exceptions or the entry of a final order. Specifically, Hearing Officer Valles found Mother in technical violation of the order

directing her to satisfy Father attorney's fees within a set period, however, she reasoned that the violation was *de minimis* because Mother paid the fees prior to the contempt hearing. She also determined that Mother was in contempt of the February 5, 2005 accord for taking the child to the doctor without Father's prior notice, failing to actively utilize Our Family Wizard, and neglecting to transport J.R., Jr. directly from the summer learning program to Father's directly. However, she determined that Mother could purge her contemptuous conduct by exercising strict compliance with these aspects of the consent order in the future.

Hearing Officer Valles rejected Father's assertions that Mother was in contempt of the February 5, 2014 consent order for, *inter alia*, failing to inform Father of her decision to move from the Fox Chapel School District, causing J.R., Jr. to miss a little league baseball game, opposing Father during their son's IEP meetings, enrolling the child in a Summer Learning Academy Program, rescheduling vision and speech therapy, being disrespectful, and not maintaining daily telephone contact. Additionally, the hearing officer denied Father's request for the costs and fees associated with litigating the instant contempt petition.

Father filed timely exceptions to Hearing Officer Valles's proposed order. On March 19, 2015, the trial court issued the above-referenced order dismissing Father's exceptions and entering the recommendation as a final

trial court order. This timely appeal followed.[2] In compliance with the trial court order, Father filed his concise statement of errors complained of on appeal pursuant to Rule 1925(b) wherein he asserted three contentions that the trial court erred in 1) dismissing his exceptions, generally; 2) dismissing the exceptions "without providing an explanation of [its] decision[;]" and 3) failing to review the entire transcript of the contempt hearing after indicating that "[it] would read the entire transcript . . . [,] a 227[-]page document, . . . yet signed the Order the same day." Father's Rule 1925(b) Statement, 4/13/15, at 3.

On appeal, he presents the following questions:

1.    Did the Honorable Court err in ignoring the transcripts of the November 5, 2014 [h]earing addressed in the Exception?

2.    Did the Honorable Court err in dismissing [Father's] [e]xceptions to the [h]earing [o]fficers [r]ecommendations pursuant to 23 Pa.C.S. § 5323.g?

3.    Did the Honorable Court err in dismissing [Father's] [e]xceptions without explanation?

Father's brief at 2.

_____

[2] The trial court order was not included in certified record on appeal. On December 18, 2015, we entered a *per curiam* order directing the trial court to enter the order on the record and transmit it to this Court as a supplement to the certified record pursuant to Pa.R.A.P. 1926. The trial court complied on December 23, 2015. Since this appeal was filed "after the announcement of a determination but before the entry of an appealable order," it is "treated as filed after such entry and on the day thereof." Pa.R.A.P. 905(a)(5).

We have explained the relevant standard of review of a trial court's resolution of a petition for contempt as follows:

> Our scope and standard of review are familiar: "In reviewing a trial court's finding on a contempt petition, we are limited to determining whether the trial court committed a clear abuse of discretion. This Court must place great reliance on the sound discretion of the trial judge when reviewing an order of contempt." *Flannery v. Iberti*, 763 A.2d 927, 929 (Pa.Super. 2000) (citations omitted).[7]
>
> _____
> [7] To sustain a finding of civil contempt, the complainant must prove certain distinct elements by a preponderance of the evidence: (1) that the contemnor had notice of the specific order or decree which he is alleged to have disobeyed; (2) that the act constituting the contemnor's violation was volitional; and (3) that the contemnor acted with wrongful intent. *Stahl v. Redcay*, 897 A.2d 478, 489 (Pa.Super. 2006). . . .
> _____

*P.H.D. v. R.R.D.*, 56 A.3d 702, 706 (Pa.Super. 2012).

Herein, Father contends that Mother was in contempt of the February 5, 2014 custody accord and requests that the court sanction Mother and reimburse him for his costs to litigate this petition. As his three arguments are interrelated, we address them jointly, and for the reasons that follow, we deny relief.

Primarily, Father contends that the trial court's admonishment of Mother for her contumacious conduct was too lenient. Stated simply, Father argues that the trial court's decision to permit Mother to purge her contempt by exercising strict compliance with the custody arrangement in the future

was utterly ineffectual, *i.e.*, a tacit approval of her behavior. Relying upon 23 Pa.C.S. § 5323(g),[3] Father argues that it would have been more appropriate to impose a penal sanction and allow Mother to purge that penalty by demonstrating her compliance with the custody order. He asserted, "When the Trail [sic] Court made the decision to not sanction [Mother] and [instead, chose to] dismiss [F]ather's [e]xceptions[,] not only did it harm the [c]ustodial [r]ights of [Father], italsoharmed [sic] the

_____

[3] The relevant provision states:

(g) Contempt for noncompliance with any custody order.--

(1) A party who willfully fails to comply with any custody order may, as prescribed by general rule, be adjudged in contempt. Contempt shall be punishable by any one or more of the following:

(i) Imprisonment for a period of not more than six months.

(ii) A fine of not more than $500.

(iii) Probation for a period of not more than six months.

(iv) An order for nonrenewal, suspension or denial of operating privilege under section 4355 (relating to denial or suspension of licenses).

(v) Counsel fees and costs.

(2) An order committing an individual to jail under this section shall specify the condition which, when fulfilled, will result in the release of that individual.

23 Pa.C.S. § 5323(g).

interest of the general public, and the integrity and authority of the Court." Father's brief at 6.

In a related contention, Father asserts that the trial court erred in ignoring Hearing Officer Valles's "lackadaisical reaction toward [Mother's] contempt" and in failing to "provide some explanation of its decision" in the order dismissing its appeal. Father's brief at 7. Finally, he implies that the trial court shirked its judicial obligations by dismissing Father's exceptions on the same afternoon that it advised him that it would review the entire transcript of the contempt hearing prior to rendering its decision, the inference being that the court lacked sufficient time to complete the feigned review. All of the foregoing arguments are meritless.

In rejecting Father's assertions, the trial court found that punitive sanctions were not warranted in this case due to the relatively minor transgressions. We agree. First, as it relates to Mother's delay in paying counsel fees, we observe that Mother satisfied the debt prior to the contempt hearing and Father did not proffer any reason for the proposed sanctions beyond punishing Mother for violating her promise to pay by the required time. Similarly, the trial court explained that, while Mother was in contempt for failing to communicate with Father regarding J.R., Jr.'s medical appointments and neglecting to actively utilize the Our Family Wizard website, it adopted Hearing Officer Valles's perspective that the infractions were *de minimis*. The trial court added that Mother and Father communicate

- 8 -

routinely about their son and his schedule, and Father often misused the lines of communication to harass Mother.

The certified record supports the trial court's rationale. During the hearing, Father outlined his intense efforts to contact J.R., Jr. when the child is in Mother's custody and Father described a telephone application that permits him to make recurring calls to Mother's telephone automatically whenever he believes that she is avoiding him. N.T., 11/5/14, at, 67-68, 137-138. In addition to the automated telephone calls, Father employs a campaign of emails, text messages, and posts on the Our Family Wizard website. Father testified,

> I call every day between 7:00 and 8:00. I usually -- she has two numbers that ring to the same phone. I will call, I will call the other number, I will call the other number and then I'll call again. Then I have an app on my phone that will recall for a half an hour. There is never an answer. When I call between 7:00 and 8:00 or about that time I also send a text message, "I want my call." I also send an email, "I want my call." I also put it on OurFamilyWizard, "I want my call." Out of those 40 "I want my calls" none of them were ever answered nor did I get the call, ever.

*Id*. at 67-68. Father admitted calling Mother up to twenty times per day. *Id*. at 137.

On other occasions, Father repeatedly sent Mother text messages or posted inquiries on Our Family Wizard requesting to know J.R., Jr.'s location or demanding explanations for the child's tardiness or absence from appointments, practices, and rehearsals, even though those events occurred during Mother's custodial period. *Id*. at 53. Hence, the certified record

establishes that Father misused the multiple lines of communication to harass Mother and pester her about their son's schedule. Thus, while Mother was in technical violation of the consent order, her avoidance of Father was understandable and her contemptuous behavior in failing to respond promptly to Father was *de minimis*.

We also rebuff Father's contentions that the trial court tacitly approved Mother's behavior. As it relates to Mother's failure to immediately return J.R., Jr. to Father following the child's participation in the Summer Learning Academy, the record bears out that Hearing Officer Valles found Mother in contempt and sternly admonished her for the frolic and detour. After Mother's counsel inquired "What is the harm that [J.R., Jr.] went to McDonald's [following the program]?" Hearing Officer Valles scolded,

> It's not her time. I don't even want to play that.
>
> . . . .
>
> Because if it happened on your time, I'd be just as strict. If you want him to go to the summer learning program you pick up you drop off, there is no lunch, there is no playing basketball, there's nothing. It's dad's time.

***Id***. at 144.

In review of this aspect of Father's argument, the trial court agreed that Father's allegations of contempt against Mother for her diversions following the summer learning program had merit. However, it also believed that the hearing officer's admonishment was appropriate. Specifically, the court concluded that Hearing Officer Valles considered the degree of

malfeasance and determined that Mother could purge her contempt by better adherence to the court-ordered custody arrangement. The trial court concluded, "Upon its review [of Father's e]xceptions, this Court determined that the Hearing Officer was well within her discretion to arrive at this decision." Trial Court Opinion, 5/29/15, at 8. Thus, notwithstanding Father's protestations to the contrary, both Hearing Officer Valles and the trial court found Mother in contempt for consuming portions of Father's periods of physical custody but neither jurist believed that Mother's contumacious conduct warranted a punitive sanction. As the trial court's determination was free of legal and within the scope of its discretion, we do not disturb it. *P.H.D.*, *supra*, at 706 ("we are limited to determining whether the trial court committed a clear abuse of discretion").

Likewise, we reject Father's related arguments that the trial court embraced Hearing Officer Valles's indifference toward Mother's behavior generally and failed to explain its rationale in the order dismissing his exceptions. At the outset, we observe that Father neglected to proffer any legal authority for his proposition that the trial court was obligated to provide in its order dismissing Father's exceptions an in-depth explanation of its determination. Predictably, our independent research also failed to reveal legal support for the principle that the court order must explain the court's reasons for denying exceptions to a master's report and recommendation. As Father failed to support this claim with legal argument

or citation to relevant legal authority, it fails. ***See In re W.H.***, 25 A.3d 330, 339 n.3 (Pa.Super. 2011) ("where an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived.").

Furthermore, and in contrast to the remaining component of Father's argument, the trial court's thorough Rule 1925(a) opinion cogently explained its decision to dismiss Father's exceptions. Stated plainly, the trial court reasoned that Father's challenges to the court's denial of his exceptions were either overly vague or baseless. Trial Court Opinion, 5/29/15, at 5, 7-8. As it relates to the three exceptions where the trial court could at least deduce Father's core complaints relating to Mother's delayed payment of his counsel fees, her avoidance of Father's multifaceted campaign to establish daily contact with her, and her frolic and detour with J.R., Jr. following the summer learning program, the trial court proffered cogent explanations for each of these arguments. As discussed *supra*, we reviewed the court's rationale, rejected Father's objections, and determined that no relief was due. Father's assertion that the trial court failed to explain the reasons for its decision is baseless.

Finally, Father implies that the trial court avoided its judicial obligations by entering the underlying order on the same afternoon that he argued his exceptions. Taking a literal interpretation of the trial court's

statement during argument that it would review the transcripts of the November 5, 2014 evidentiary hearing completely before resolving the exceptions, Father argues that it was utterly impossible to review the 227-page transcript and enter the order dismissing his exceptions on the same afternoon. Hence, he speculates that the trial court did not conduct the contemplated review of the entire record, and he assails the court's integrity and commitment to the judicial process.

Graciously, the trial court explained in its Rule 1925(a) opinion that Father simply misunderstood its statement to "review the transcript" as a promise to review the transcript and issue its own, presumably *de novo*, ruling. In reality, however, the trial court simply reiterated its commitment to review the record for an apparent abuse of discretion consistent with its standard of review. ***Anderson v. Anderson***, 822 A.2d 824, 830 (Pa.Super. 2003) ("in determining issues of credibility the master's findings must be given the fullest consideration for it was the Master who observed and heard the testimony and demeanor of various witnesses."). As the trial court conducted the appropriate review of Hearing Officer Valles's recommendation and proposed order and determined that it was appropriate, we rebuff Father's misdirected attack on the trial court's integrity.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>1/22/2016</u>