J-A25020-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| K.A.M. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| L.S. | |
| Appellant | No. 179 EDA 2017 |

Appeal from the Order Entered December 7, 2016
In the Court of Common Pleas of Montgomery County
Civil Division at No: 2002-25932

BEFORE:  OTT, STABILE, JJ., and STEVENS, P.J.E.[*]

MEMORANDUM BY STABILE, J.:  **FILED FEBRUARY 12, 2018**

Appellant, L.S. ("Mother"), appeals from an order entered in the Court of Common Pleas of Montgomery County denying her petition to hold K.A.M. ("Father") in civil contempt.  We affirm.

We summarize the relevant factual and procedural history of this matter as follows.  Father and Mother have two children, H.M., who is emancipated, and W.M. ("W"), who was born on February 22, 2000 and is now 17 years old.  On May 19, 2004, the trial court approved the parties' stipulation to terms of shared legal and physical custody of the children ("2004 order").

---

[*] Former Justice specially assigned to the Superior Court.

In August 2014, W informed Mother that he no longer wished to live at Mother's home. Mother wrote that she would not force W to comply with the 2004 order to give him time to process what he was feeling. Thereafter, W lived exclusively with Father. For the next six months, Father continued to pay Mother monthly child support of $10,177.00, even though W no longer lived with her.

In February 2015, Father filed a petition to terminate child support payments to Mother. In response, on March 27, 2015, Mother filed a petition for special relief to enforce custody order and for contempt of custody order, alleging violations of the legal and physical custody provisions of the 2004 order and seeking attorney fees as sanctions. On April 2, 2015, Father filed an answer and counterclaim seeking to modify the physical custody schedule.

On July 20, 2015, the trial court appointed Maria Gibbons as guardian *ad litem* ("GAL"). On September 1, 2015, the trial court entered an order approving the parties' stipulation for family therapy designed to reunify W and Mother.

On October 3, 2016, following eight days of hearings, the trial court issued detailed findings of fact and a 14-page order which held that Father was not in contempt. The order also awarded Father primary physical custody, set forth a gradual increase of Mother's limited custodial time, included provisions for ongoing family therapy, and directed Father and Mother to each pay 50% of the fees charged by several professional witnesses.

On October 13, 2016, Mother filed a motion for reconsideration challenging, *inter alia*, the dismissal of her contempt petition. On October 20, 2016, the trial court entered an order granting reconsideration of the October 3, 2016 order "as to the issues set forth in the aforementioned motion." In a footnote, the trial court added: "The Court did advise the parties on the record that the [p]etitions requesting financial relief would be considered by the Court post hearing and following the entry of an [o]rder on the underlying custodial issues."

In an order docketed on December 7, 2016, the trial court amended the October 3, 2016 order to require Father to pay 60% of the professional witnesses' fees instead of 50%. The order continued: "The final disposition of the following [p]etitions were addressed in the Court's October 3, 2016 [o]rder: Father's [p]etition [f]or [t]ermination (filed on February 2, 2015) [and] Mother's [p]etition for [s]pecial [r]elief [t]o [e]nforce [c]ustody [o]rder (filed on March 27, 2015) for [c]ontempt . . . ."

On January 6, 2017, Mother appealed to this Court and filed a statement of errors complained of on appeal. The trial court filed a Rule 1925 opinion stating that "[a]ny displeasure with this Court by Mother with regard to a failure to find Father in contempt of the [2004 order] . . . has been waived by Mother's failure to appeal the October 3, 2016 [o]rder." Trial Court Opinion, 3/9/17, at 5. Even if Mother preserved this issue for appeal, the court

continued, its denial of her contempt petition was a proper exercise of discretion.  *Id.* at 5-7.

Mother raises the following issues in this appeal:

[1.]  Whether this Court should consider both the trial court's October 3, 2016 and December 7, 2016 Orders when determining whether the trial court abused its discretion by failing to find willful contempt by [Father]?

[2.]  Whether the trial court abused its discretion by failing to provide any basis for its summary dismissal of Mother's Petition for Civil Contempt in the trial court's Findings of Fact and accompanying Order?

[3.]  Whether the trial court abused its discretion in not finding [Father] in willful contempt of the May 19, 2004 Custody Order, or the September 1, 2015 Family Therapy Order?

Mother's Brief at 9.

We review the trial court's decision on Wife's contempt petition for clear abuse of discretion.  *See Flannery v. Iberti*, 763 A.2d 927, 929 (Pa. Super. 2000) (citation omitted).  An abuse of discretion occurs when the trial court exercises its judgment in a manifestly unreasonable manner.  *See Kraisinger v. Kraisinger*, 928 A.2d 333, 341 (Pa. Super. 2007).

In proceedings for civil contempt,

the general rule is that the burden of proof rests with the complaining party to demonstrate, by preponderance of the evidence, that the defendant is in noncompliance with a court order.  However, a mere showing of noncompliance with a court order, or even misconduct, is never sufficient alone to prove civil contempt.

To be punished for contempt, a party must not only have violated a court order, but that order must have been definite, clear, and

specific-leaving no doubt or uncertainty in the mind of the contemnor of the prohibited conduct.

> Because the order forming the basis for civil contempt must be strictly construed, any ambiguities or omissions in the order must be construed in favor of the defendant. In such cases, a contradictory order or an order whose specific terms have not been violated will not serve as the basis for a finding of contempt.

To sustain a finding of civil contempt, the complainant must prove certain distinct elements: (1) that the contemnor had notice of the specific order or decree which he is alleged to have disobeyed; (2) that the act constituting the contemnor's violation was volitional; and (3) that the contemnor acted with wrongful intent. A person may not be held in contempt of court for failing to obey an order that is too vague or that cannot be enforced.

*Lachat v. Hinchliffe*, 769 A.2d 481, 488-89 (Pa. Super. 2001) (citations and quotation marks omitted).

In her first argument on appeal, Mother contends that she was not required to appeal within thirty days of the October 3, 2016 Order, and therefore, she preserved her objection to the denial of her contempt petition for appeal. We agree.

Following the October 3, 2016 order, Mother filed a motion for reconsideration in which she objected, *inter alia*, to the denial of her contempt petition. On October 20, 2016, the trial court granted reconsideration "as to the issues set forth in the aforementioned motion." This order was a timely grant[1] of reconsideration on **all** issues in Mother's motion, including her

_____

[1] *See* 42 Pa.C.S.A. § 5505 (court has jurisdiction to grant reconsideration of final order within thirty days after its entry).

contempt petition. Thus, the October 20, 2016 order relieved Mother of any duty to appeal within thirty days after October 3, 2016.

Father argues that the footnote to the October 20, 2016 order limited the grant of reconsideration to financial issues outside the scope of Mother's contempt petition, thus placing Mother on notice of her duty to appeal within thirty days after October 3, 2016. The footnote is too ambiguous for us to agree with Father's construction. The footnote did not expressly exclude Mother's contempt petition from reconsideration; it simply referenced the court's promise to review "financial" issues "post hearing" after deciding "custodial issues." These "financial" issues arguably included Mother's demand for attorney fees in her contempt petition. Further, Father's interpretation conflicts with the main text of the Order, which granted reconsideration on all issues, including the contempt petition.

Father also claims waiver based on the text in the December 7, 2016 order that the October 3, 2016 order was the "final disposition" of the contempt petition. We disagree with Father (and, by extension, the trial court) on this point. To repeat, the main text of the October 20, 2016 order granted reconsideration of Mother's contempt petition, so the final disposition of the contempt petition did not take place until the December 7, 2016 order.

We review Mother's second and third arguments on appeal together, because the theme of both arguments is the same: the trial court abused its discretion by failing to provide any basis for denying the contempt petition

and by disregarding evidence of Father's contempt. More specifically, Mother accuses Father of violating the 2004 order by (1) threatening to call the police if Mother came onto Father's property to pick up W on her custody day, (2) failing to communicate with Mother on numerous issues relating to W's education, (3) failing to consult with Mother on W's medical and dental issues, (4) failing to inform Mother that W decided to participate in a summer program in Europe, (5) failing to inform Mother that W was bullied at school or punched a close friend at school, and (6) unilaterally canceling family therapy sessions or otherwise undermining Mother's attempts at reunification with W. *Id.* at 13-18.

Having carefully reviewed the record, we conclude that the trial court acted within its discretion by denying Mother's contempt petition. Despite Mother's insistence that the trial court ignored reams of evidence demonstrating Father's contempt for the 2004 order, we conclude that the trial court provided a balanced and thoughtful assessment of Father's conduct. On one hand, the court took Father to task for allowing W "to make unilateral decisions relating to his responsibilities (not going to school/therapy, dropping out of activities, not seeing his Mother, and not following [c]ourt [o]rders)." Findings of Fact, 10/3/16, at 2. On the other hand, the court perceived that Father is a loving parent who did not manipulate or bully W into leaving Mother's household. W made up his own mind to live with Father, because W feels closer to Father than to Mother, "has assimilated to life in Father's

household," and "clearly does not want to return to living in Mother's household." *Id.* at 6, 8. The court also found that Father did not interfere with reunification therapy between Mother and W. Both the GAL and W testified that W met with Mother and "poured his heart out" during reunification therapy, but Mother did not respond. *Id.* at 8.

Simply put, the trial court carefully weighed the testimony, and acted within its discretion, in ruling that Father's conduct, while not completely above reproach, did not evince contempt for the 2004 order. The trial court also acted within its discretion in deciding that Mother's motive for seeking contempt sanctions was not to vindicate her parental rights but to retaliate against Father for petitioning to terminate monthly child support payments. *See* Trial Court Opinion, 3/9/17, at 6 ("[o]nly after Father filed his [p]etition to [t]erminate [s]upport on February 2, 2015 did Mother then file her [p]etition for [c]ontempt, many months after her acquiescence to the establishment of a new custodial status quo," *i.e.*, W's exclusive residence in Father's household). We accord considerable deference to the trial court's evaluation of Mother's contempt petition due to the fact-sensitive nature of these proceedings. *See Flannery*, 763 A.2d at 929. We see no reason to take issue with the trial court's substantive decisions in this case.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/12/18