J-A05038-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| RACHEL OLAH | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| JORDAN BARTHOLOMEW | : | |
| | : | |
| Appellant | : | No. 2136 EDA 2017 |

Appeal from the Order Entered June 6, 2017
In the Court of Common Pleas of Northampton County Civil Division at
No(s): C-0048-CV-2016-7361

BEFORE:   DUBOW, J., MURRAY, J., and STEVENS*, P.J.E.

MEMORANDUM BY STEVENS, P.J.E.:                **FILED APRIL 04, 2018**

Appellant, Jordan Bartholomew, appeals from the June 6, 2017, order

entered in the Court of Common Pleas of Northampton County denying his

petition for civil contempt and/or enforcement of court order[1] as to Appellee,

Rachel Olah, and immediately terminating Appellee's obligations to Appellant

---

[1] "Generally, contempt can be criminal or civil in nature, and depends on whether the core purpose of the sanction imposed is to vindicate the authority of the court, in which case the contempt is criminal, or whether the contempt is to aid the beneficiary of the order being defied, in which case it is civil." **Commonwealth v. Bowden** 576 Pa. 151, 838 A.2d 740, 760 (2003) (citations omitted).  Here, the petition sought to aid Appellant as it related to the parties' court-approved settlement, and thus, it was civil in nature.

---

*   Former Justice specially assigned to the Superior Court.

under the parties' court-approved settlement agreement.[2] After a careful review, we affirm.

The trial court has aptly set forth the facts and procedural history, in part, as follows:

> The parties herein are former romantic partners. During the course of their relationship, two dogs--Reilly and Koda--were purchased by [Appellee] with financial assistance from [Appellant]. Following the cessation of the parties' relationship, [Appellee] sought [Appellant's] assistance in caring for the dogs during a lengthy family emergency. On August 19, 2016, [Appellee] filed [a] Complaint in this matter, setting forth claims for conversion and replevin with respect to the two dogs. In her pleading, [Appellee] alleged that [Appellant] refused to return the dogs to her upon request following her family emergency. [Appellant] contended that he was a joint owner of the dogs due to his previous financial contributions to their purchase and care.
>
> On August 30, 2016, following a partial hearing, the parties entered into a [court-approved settlement] agreement [ ] whereby it was acknowledged that the dogs belong to [Appellee]. It was further agreed that [Appellee] would reimburse [Appellant] $1,000 for costs associated with the purchase and care of the dogs and a cell phone, and that [Appellant] would be entitled to have [possession of] the dogs during the last full weekend of each month from Friday at 1:00 p.m. until Sunday at 6:00 p.m. The parties were required to meet at a designated location at those specified times to exchange the dogs.
>
> For several months after the agreement was entered into, [Appellant's] monthly [possession of] the dogs took place without incident, with each party meeting their obligations [under the agreement], including [Appellee's] financial obligation.

_____

[2] We note the trial court's denial of Appellant's civil contempt petition is an appealable order. *See Flannery v. Iberti*, 763 A.2d 927, 930 n.1 (Pa.Super. 2000) (noting "a trial court's denial of a civil contempt petition is appealable"); *Basham v. Basham*, 713 A.2d 673, 674 (Pa.Super. 1998) (reiterating that "[w]here a petition alleges refusal to comply with a court order, and the trial court denies the petition, the denial order is appealable").

[Appellant] also enjoyed additional [possession of] the dogs by [Appellee's] acquiescence to some of [Appellant's] requests. Notably, [Appellant] sent harassing text messages to [Appellee] on a number of occasions when she did not agree to [possession] beyond th[at] provided in the agreement.

In both January and March 2017, [Appellant] failed to return the dogs at the appointed time and place following his periods of [possession]. On both occasions, [Appellant] communicated to [Appellee] at or about the time for returning the dogs that one or both dogs had gone missing. On each occasion, the dogs were missing for a lengthy period of time, and [Appellee] was the party who was forced to locate the dogs, without any meaningful assistance from [Appellant].

As a result of [Appellant's] failure to properly supervise the dogs and return them to [Appellee's] care at the appointed time and place, [Appellee] denied [Appellant] any further [possession of] the dogs as contemplated by the August 30, 2016[,] agreement. On May 19, 2017, [Appellant] filed [a] Petition for Contempt [and/or Enforcement of Court Order] seeking to enforce the August 30, 2016[,] agreement. A hearing was held on May 26, 2017.

Trial Court Opinion, filed 6/6/17, at 1-3.

At the hearing, Appellant confirmed the parties had disputed over the ownership of two dogs; however, they entered a court-approved settlement agreement in August of 2016 whereby Appellee was to receive ownership of the dogs with Appellant receiving possession on the last weekend of every month from Friday starting at 3:00 p.m. to Sunday at 6:00 p.m. N.T., 5/26/17, at 5. Appellant testified Appellee initially complied with the terms of the agreement by meeting him at the appointed place and time to exchange the dogs; however, she stopped doing so in March of 2017. *Id.* Appellant indicated the last time he was given possession of the dogs was in February of 2017. *Id.* at 6.

- 3 -

Appellant denied that he asked Appellee for additional time with the dogs and, since February of 2017, he asked for possession of the dogs only for his scheduled time in March of 2017. *Id.* As to the reason Appellee denied him possession of the dogs late in March, Appellant testified "Koda ended up getting lost and [Appellee] told [him] that [he] wasn't fit to take care of [Koda] anymore." *Id.* Appellant pointed to a text message Appellee sent him in March in which she indicated "[h]ey, so you aren't getting the dogs anymore. I can't have you constantly putting them in danger. I'm sorry, but you're too irresponsible." *Id.* at 8.

Appellant testified that he was satisfied with the previous agreement reached between the parties whereby he was given possession of the dogs for one weekend every month, and he requested the trial court "reaffirm that agreement[.]" *Id.* at 7.

On cross-examination, Appellant admitted that, following the entry of the parties' agreement, Appellee gave Appellant extra possession of the dogs beyond the time set forth in the agreement when Appellant asked for such possession. *Id.* at 8. Appellant also admitted that the dogs did not get lost just one time while they were in his care. *Id.* at 9. Specifically, the relevant exchange occurred between Appellant and Appellee's counsel:

Q: Now, the dogs didn't just get lost one time, did they?
A: No.
Q: First in January of this year you lost both dogs, right?
A: I don't remember certain times.

Q: But you agree with me that there was more than one occasion, right?

A: Yes.

Q: And these dogs are lost for more than just a few minutes, right?

A: Yeah.

Q: They were lost for several hours?

A: Just that one time [for] several hours. Other times were maybe an hour.

Q: So there were multiple times in addition to the two times?

A: Yes.

Q: Okay. So you have lost the dogs more than two times?

A: Yes.

Q: And you only have them one weekend a month?

A: It was more than that.

Q: Okay. The last time, after--when [Appellee]--and this happened in March, you lost Koda in March, right?

A: Yes.

Q: And that dog was lost for 9 to 10 hours, right?

A: Less than that.

Q: And this was after [Appellee] had some surgery, some health problems that you were aware of?

A: Yes.

Q: [Appellee] asked you to watch the dogs?

A: Yes.

Q: And when she asked to pick them up, you told her that there was a problem, that Koda was missing?

A: Yes.

Q: And then you proceeded to just go to work, right?

A: Yes.

Q: Okay. And [Appellee] had to try to track the dogs down?

A: I was helping.

Q: You were helping from work?

A: I was helping before I went to work.

N.T., 5/26/17, at 9-10.

Appellant admitted that Koda was later found several miles from his house and in a different residential development. *Id.* at 11. Appellant also admitted that he asked Appellee for additional time with the dogs in February, and he told her "that if she didn't give [him] more time, things were going to get bad or were not going to be civil anymore[.]" *Id.* at 12. Appellee then asked Appellant to watch the dogs in March, at which time he lost Koda. *Id.*

Appellee testified that, when Appellant asked for additional time with the dogs, she often allowed it because she was scared. *Id.* at 16. She indicated Appellant sent her threatening text messages when she denied him additional possession of the dogs. *Id.* Appellee testified that, in January of 2017, when Appellant was to return the dogs at the appointed time and place, he telephoned her to inform her that both dogs were missing. *Id.* at 17. Appellee traveled to Appellant's home, and she eventually found the dogs in Appellant's neighbor's yard. *Id.* The dogs were "muddy, covered in animal feces and [had] little sticker bushes all matted in their fur." *Id.* Appellee incurred expenses in connection with cleaning and grooming the dogs after the incident. *Id.*

Appellee testified that, in early March of 2017, she gave Appellant extra time with the dogs and, when it was time for Appellant to return the dogs, he informed her that "Koda [was] MIA." *Id.* at 19. Appellant told her that Koda had been missing since approximately 10:30 a.m. *Id.* Appellee later found

Koda at 8:00 or 9:00 p.m. *Id.* Appellee found the dog after a woman in a residential development posted photos of the lost dog on Facebook. *Id.* Appellant had spent about one hour looking for Koda and then he went to work. *Id.* at 20.

On cross-examination, Appellee admitted that, after Appellant lost Koda, she denied him possession of the dogs because she was concerned that he was not going to take care of the dogs. *Id.* at 22. Appellee admitted that she sent Appellant a text indicating she was not going to let him have further possession of the dogs because she would not let him continue putting them in danger. *Id.* at 24.

Following the hearing, by order and opinion entered on June 6, 2017, the trial court denied Appellant's petition for contempt and/or enforcement of court order, and further, held that Appellee was relieved of her obligation under the parties' agreement to provide Appellant with possession of the dogs. Appellant filed a timely notice of appeal, and on July 7, 2017, the trial court directed Appellant to file a Pa.R.A.P. 1925(b) statement. Appellant timely complied on July 27, 2017, and the trial court filed a responsive Pa.R.A.P. 1925(a) opinion.

Appellant sets forth the following issues for our review:

1. Did the [trial court] commit reversible error in finding that [Appellant] materially breached the [parties'] agreement set forth in the order of August 30, 2016?

2. Did the [trial court] commit reversible error by considering new claims and matters beyond the scope of the petition before [the trial court] effecting a denial of due process?

- 7 -

Appellant's Brief at 6.

Initially, we note that we review the trial court's decision on Appellant's contempt petition for a clear abuse of discretion. *Flannery*, 763 A.2d at 929 (citation omitted). "This Court will reverse a trial court's order denying a civil contempt petition only upon a showing that the trial court misapplied the law or exercised its discretion in a manner lacking reason." *MacDougall v. MacDougall*, 49 A.3d 890, 892 (Pa.Super. 2012). Thus, "even where the facts could support an opposite result,. . .we must defer to the trial [court] so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion." *In re Adoption of S.P.*, 616 Pa. 309, 47 A.3d 817, 826–27 (2012).

In his first issue, Appellant contends the trial court erred in concluding Appellant materially breached the parties' court-approved settlement agreement, thus excusing Appellee's subsequent noncompliance when she denied Appellant possession of the dogs. In essence, Appellant challenges the sufficiency of the evidence adduced at the hearing to sustain the trial court's finding of no contempt.

> [In proceedings for civil contempt,] the general rule is that the burden of proof rests with the complaining party to demonstrate, by preponderance of the evidence, that the defendant is in noncompliance with a court order. However, a mere showing of noncompliance with a court order, or even misconduct, is never sufficient alone to prove civil contempt.

*Lachat v. Hinchliffe*, 769 A.2d 481, 488–89 (Pa.Super. 2001) (citations and quotation marks omitted).

"For a person to be found in civil contempt, the moving party must prove that: (1) the contemnor had notice of the specific order or decree that he [or she] disobeyed; (2) the act constituting the violation was volitional; and[,] (3) the contemnor acted with wrongful intent." *Gunther v. Bolus*, 853 A.2d 1014, 1017 (Pa.Super. 2004). "The order alleged to have been violated must be definite, clear, and specific—leaving no doubt or uncertainty in the mind of the contemnor of the prohibited conduct and is to be strictly construed." *Id.* (internal quotations, citations, and emphasis omitted). Moreover, we defer to the trial court's credibility determinations with respect to witnesses who have appeared before it because that court has had the opportunity to observe their demeanor. *Habjan v. Habjan*, 73 A.3d 630, 644 (Pa.Super. 2013).

Initially, we note in the case *sub judice* there is no dispute that the trial court approved a settlement agreement between the parties whereby Appellee was given ownership of the two dogs, Reilly and Koda, and Appellant was given possession on "the last full weekend of the month, Friday at 1 until Sunday at 6." N.T., 8/30/16, at 2-3. Further, the agreement relevantly provided the parties were to exchange the dogs at a Sheetz on Route 248. *Id.* at 3.

The parties' court-approved settlement "is a contract to be interpreted under contract principles."[3]  *Mace v. Atlantic Refining Marketing Corp.*, 567 Pa. 71, 785 A.2d 491, 496 (2001).  Our courts have previously concluded that parties to a contract have an obligation to conduct themselves with good faith.  *See generally Atlantic Richfield v. Razumic*, 480 Pa. 366, 390 A.2d 736, 742 (1978).

> Additionally, our [Supreme] Court has long recognized the established precept of contract law that a material breach of a contract relieves the non-breaching party from any continuing duty of performance thereunder.  It is equally well established, that [a] party also may not insist upon performance of the contract when he himself is guilty of a material breach of the contract.

*LJL Transp., Inc. v. Pilot Air Freight Corp.*, 599 Pa. 546, 962 A.2d 639, 647-48 (2009) (citations, quotation marks, and quotations omitted).  *See Widmer Engineering, Inc. v. Dufalla*, 837 A.2d 459, 467 (Pa.Super. 2003) ("[A] material breach by one party to a contract entitles the non-breaching party to suspend performance.") (citations omitted)).

This Court has explained the relevant areas of inquiry under these principles as follows:

---

[3] In interpreting the language of a contract, we attempt to ascertain the intent of the parties.  *Crawford Central Sch. Dist. v. Commonwealth of Pennsylvania*, 585 Pa. 131, 888 A.2d 616, 623 (2005).  When the words of an agreement are clear and unambiguous, the intent of the parties is to be ascertained from the language used in the agreement, which will be given its commonly accepted and plain meaning. *Willison v. Consolidation Coal Co.*, 536 Pa. 49, 637 A.2d 979, 982 (1994).  Here, the words of the parties' court-approved settlement agreement are clear, unambiguous, and not in dispute.

"When performance of a duty under a contract is due, any nonperformance is a breach." Restatement (Second) of Contracts § 235(2) (1981). If a breach constitutes a material failure of performance, then the non-breaching party is discharged from all liability under the contract. If, however, the breach is an immaterial failure of performance, and the contract was substantially performed, the contract remains effective. In other words, the non-breaching party does not have a right to suspend performance [if the breach is not material].

Whether a breach is so substantial as to justify an injured party's regarding the whole transaction as at an end 'is a question of degree; and it must be answered by weighing the consequences in the actual custom of [people] in the performance of contracts similar to the one that is involved in the specific case.' In determining materiality for purposes of breaching a contract, we consider the following factors:

a) the extent to which the injured party will be deprived of the benefit which he [or she] reasonably expected;

b) the extent to which the injured party can be adequately compensated for that part of the benefit of which he [or she] will be deprived;

c) the extent to which the party failing to perform or to offer to perform will suffer forfeiture;

d) the likelihood that the party failing to perform or offer to perform will cure his failure, taking account of all the circumstances including any reasonable assurances;

e) the extent to which the behavior of the party failing to perform or offer to perform comports with standards of good faith and fair dealing.

Restatement (Second) of Contracts § 241 (1981).

**Widmer Engineering, Inc.**, 837 A.2d at 467-68 (citations, quotation marks,

and quotations omitted).

- 11 -

In the case *sub judice*, in explaining its holding that Appellant materially breached the parties' agreement, the trial court relevantly indicated the following:

Having considered the testimony presented at the hearing, as well as the exhibits of record, [the trial court] conclude[s] that [Appellant's] failure to ensure the safe return of the dogs to [Appellee] as contemplated by the agreement was a material breach thereof.

***

In this case, the safe return of the dogs to [Appellee], their owner, at the appointed time, is a material aspect of the parties' agreement. If the dogs are not returned safely to [Appellee's] care, she cannot be adequately compensated by monetary means. [Appellant's] failure to ensure the safe return of the dogs and his decision to leave the responsibility of locating them once they were lost—on two occasions within a short period of time--to [Appellee] evidences a low likelihood that [Appellant] [will] alter his behavior in the future. Moreover, [Appellant's] harassing statements to [Appellee] via text messages clearly evidence a lack of good faith and fair dealing on [Appellant's] part. In [Appellant's] own words: "All I want is to be civil and get them as much as I can. You wanna [*sic*] be this way and only give me my weekend then civil goes out the window." And further: "I want an updated agreement that gives me more time in return for paying half the expense[.] If we can't have that, then things are going to get ugly[.]"

Given [Appellant's] material breach of the parties' August 30, 2016[,] agreement, [the trial court finds] that [Appellee] was and is relieved of all further obligation under the agreement. [Appellee's] failure to permit [Appellant's] [possession] following his [material] breach of the agreement is not grounds for a finding of contempt. Furthermore, [Appellant] is no longer entitled to any [possession of] the dogs.

Trial Court Opinion, filed 6/6/17, at 3-4.

We conclude the record supports the trial court's factual findings. *See*

*In re Adoption of S.P.*, *supra*. Further, the trial court's legal conclusion that

Appellant materially breached the parties' agreement is not the result of an error of law or an abuse of discretion. *Id.*

The principal purpose of the parties' agreement was to resolve the ownership of two dogs. Ultimately, the agreement provided Appellee with full ownership, subject to Appellant's possession of the dogs one weekend a month. However, by Appellant's own admission, on several occasions (more than two times),[4] he lost the dogs during the time in which they had been entrusted to his care. Appellee testified that, in the most recent episode, the whereabouts of one of the dogs, Koda, was unknown for over ten hours, Appellant did not participate fully in attempting to locate the missing dog, and Appellee found the dog only after viewing posts through social media. As the trial court noted, in addition to "losing" the dogs on several occasions, Appellant harassed Appellee in an effort to secure additional possession of the dogs.

_____

[4] Appellant contends the trial court erred in considering his "misplacement" of Koda in March of 2017 since this incident did not occur on his scheduled weekend under the parties' agreement and, thus, was irrelevant. However, Appellant does not point to that place in the record where he objected to the trial court's consideration of the evidence on this basis. In any event, the evidence was relevant to the overall inquiry of whether Appellant failed to conform to standards of good faith and fair dealing, particularly since the trial court found credible Appellee's testimony that she provided Appellant with additional possession of the dogs, in part, because Appellant sent her threatening text messages. Trial Court Opinion, filed 6/6/17, at 2. *See Widmer Engineering, Inc.*, *supra*.

We agree with the trial court that Appellant's actions constituted a material breach that frustrated the principal purpose the parties' agreement such that Appellee should not have been expected to continue to perform under the agreement. Appellant violated Appellee's basic trust as it related to the care of the dogs. His breach was "so fundamentally destructive [that] it understandably and inevitably cause[d] the trust which is the bedrock foundation and veritable life lifeblood of the parties' contractual relationship to essentially evaporate." *Umbelina v. Adams*, 34 A.3d 151, 160 (Pa.Super. 2011) (quotation and citation omitted). Consequently, we agree with the trial court that Appellee was relieved of any continuing duty to perform under the agreement, and therefore, as Appellee did not "act[ ] with wrongful intent" in denying Appellant possession of the dogs, the trial court properly denied Appellant's petition for civil contempt/enforcement of the agreement. *Gunther*, 853 A.2d at 1017.

In his final claim, Appellant contends "[t]he trial court abused its discretion by considering claims and granting relief that was not properly before it." Appellant's Brief at 16. Specifically, he contends the trial court's inquiry should have been limited to whether Appellee was in contempt of the parties' court-approved settlement agreement. *See id.* Thus, he argues that, after the trial court found Appellee was not in contempt, the trial court erred and violated his due process rights by expanding the scope of its consideration

to include whether Appellee was relieved of any future obligation under the parties' agreement.

In support of his argument, Appellant cites to **Lachat v. Hinchliffe**, 769 A.2d 481 (Pa.Super. 2001), wherein this Court relevantly held the following:

> [T]he trial court employed the contempt hearing as a forum to attempt the resolution of all the myriad disputes between the parties. This was improper. The focus of a contempt hearing is very narrow and is confined to a consideration of whether the specific order before the court has been violated.

**Id.** at 491 (citation omitted). However, we conclude **Lachat** is distinguishable from the case *sub judice*.

**Lachat** involved a contempt petition filed in a long-standing property dispute involving a stipulation entered between the parties in 1988 as to the use of a right-of-way. In determining that one of the parties was in contempt for violating the 1988 stipulation, the trial court relied upon evidence not germane to the 1988 order and, further, directed the alleged contemnor to pay for a survey prepared in 2000 by the opposing party.

On appeal, we reversed the entirety of the order. **See id.** In so doing, after concluding the evidence did not support a finding of contempt with regard to the 1988 order, we held the trial court erred in considering issues not germane to the contempt petition, including the parties' liability for the preparation of a survey in 2000. However, contrary to Appellant's assertion, we conclude the trial court in the instant matter did not improperly expand the scope of its consideration as the trial court did in **Lachat**.

In the case *sub judice*, as the trial court cogently indicated in its opinion, the issue of whether Appellant materially breached the parties' court-approved settlement agreement was integral to the issue of whether Appellee's subsequent noncompliance required a finding of contempt. **See** Trial Court Opinion, filed 8/2/17, at 4-5. After concluding Appellant materially breached the parties' agreement, the trial court noted that Pennsylvania law relieved Appellee of any further performance under the parties' agreement such that her refusal to permit Appellant possession of the dogs as alleged in the contempt petition did not constitute contempt. **See id.** As the trial court noted, the logical conclusion was that, once the agreement was terminated as it related to the instant contempt petition, it was terminated for future purposes, as well. **See id.**

We agree with the trial court's sound reasoning in this regard. Unlike **Lachat**, in which the trial court expanded the scope of the contempt inquiry to require a party to reimburse the opposing party for a survey wholly unrelated to an order entered in 1988, the trial court in the case *sub judice* properly narrowed the inquiry to pertinent matters. Accordingly, Appellant's due process rights were not violated. **See Wood v. Geisenhemer-Shaulis**, 827 A.2d 1204 (Pa.Super. 2003) (indicating that due process requires that a party receive notice and an opportunity for explanation and defense).

For all of the foregoing reasons, we affirm.

Affirmed.

- 16 -

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 4/4/18